**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

-------------------------------------------------------x------------------------------------------------------
                                                       :
In re                                                  :      **Chapter 11**
                                                       :
**FIRST BRANDS GROUP, LLC, *et al.*,[1]**              :      **Case No. 25-90399 (CML)**
                                                       :
       Debtors.                                        :      **(Jointly Administered)**
                                                       :
                                                       :
-------------------------------------------------------x------------------------------------------------------
                                                       :
**FIRST BRANDS GROUP, LLC, *et al.*,**                 :
                                                       :
       Plaintiffs,                                     :      **Adversary Pro. No. 25-___ (CML)**
                                                       :
**v.**                                                 :
                                                       :
**PATRICK JAMES, THE PATRICK JAMES**                   :
**TRUST, ALBION REALTY, LLC,**                         :
**ALESTER TECHNOLOGIES LLC,**                          :
**BATTERY PARK HOLDINGS LLC, BOND**                    :
**STREET ASSET MANAGEMENT LLC,**                       :
**IGNITE ACQUISITION HOLDINGS LLC,**                   :
**LARCHMONT LLC,**                                     :
**PEGASUS AVIATION, LLC,**                             :
**JOHN AND JANE DOE(S) 1-100, and ABC**                :
**CORPORATION(S) 1-100,**                              :
                                                       :
       Defendants.                                     :
                                                       :

**EMERGENCY *EX PARTE* APPLICATION FOR PRELIMINARY INJUNCTIVE
RELIEF, INCLUDING AN EMERGENCY MOTION FOR A TEMPORARY
RESTRAINING ORDER, PRELIMINARY INJUNCTION, AND REQUEST FOR
HEARING**

---

[1] A complete list of the debtors in these chapter 11 cases may be obtained on the website of the debtors' claims and noticing agent at https://restructuring.ra.kroll.com/firstbrands. The debtors' service address for these chapter 11 cases is 127 Public Square, Suite 5300, Cleveland, OH 44114.

**EMERGENCY RELIEF HAS BEEN REQUESTED. RELIEF IS REQUESTED NO LATER THAN 5:00 PM ON NOVEMBER 3, 2025.**

**IF YOU OBJECT TO THE RELIEF REQUESTED OR YOU BELIEVE THAT EMERGENCY CONSIDERATION IS NOT WARRANTED, YOU MUST APPEAR AT THE HEARING IF ONE IS SET, OR FILE A WRITTEN RESPONSE PRIOR TO THE DATE THAT RELIEF IS REQUESTED IN THE PRECEDING PARAGRAPH. OTHERWISE, THE COURT MAY TREAT THE PLEADING AS UNOPPOSED AND GRANT THE RELIEF REQUESTED.**

## TABLE OF CONTENTS

I. INTRODUCTION ..................................................................................................... 5

II. JURISDICTION AND VENUE ............................................................................... 7

III. BACKGROUND ..................................................................................................... 7

IV. ARGUMENT ......................................................................................................... 11

    A. Legal Standard .............................................................................................. 11

    B. The Debtors are Likely to Succeed on the Merits .......................................... 14

    C. The Debtors Will Suffer Irreparable Harm Without Immediate Relief ............... 19

    D. An Injunction Will Not Cause Harm to Defendants and the Balance of
       Equities Favors an Injunction ....................................................................... 21

    E. Granting Injunctive Relief Is in the Public Interest ............................................ 22

V. EMERGENCY RELIEF, NOTICE, AND RELIEF FROM BOND
   REQUIREMENT ..................................................................................................... 23

VI. PRAYER FOR RELIEF ........................................................................................ 24

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*A.T.N. Indus. v. Gross*,
    632 F. App'x 185 (5th Cir. 2015) ....................................................................20, 24

*Airn Liquidation Trust Co., LLC v. Media Effective, LLC* (*In re Nat'l Realty Investment Advisors, LLC*),
    22-14539, Dkt. 9 (Bankr. D.N.J) ................................................................................24

*Amegy Bank Nat'l Ass'n v. Monarch Flight II, LLC*,
    No. H-11-3218, 2011 WL 6091807 (S.D. Tex. Dec. 7, 2011) ..................................20

*Applied Energetics, Inc. v. Farley*,
    No. CV 2018-0489-TMR, 2019 WL 334426 (Del. Ch. Jan. 23, 2019) ....................14

*In re Arabella Petroleum Co., LLC*,
    647 B.R. 851 (Bankr. W.D. Tex. 2022) ...................................................................16

*Avande, Inc. v. Evans*,
    C.A. No. 2018-0203-AGB, 2019 WL 3800168 (Del. Ch. Aug. 13, 2019)................18

*Ball v. Soundview Composite LTD (In re Soundview Elite LTD) et al.*,
    543 B.R. 78 (Bankr. S.D.N.Y 2016) .........................................................13, 14, 21

*Bank of Saipan v. CNG Fin. Corp.*,
    380 F.3d 836 (5th Cir. 2004) ....................................................................................17

*In re BYJU's Alpha, Inc.*,
    661 B.R. 109 (Bankr. D. Del. 2024) .......................................................................21

*Carlson v. Hallinan*,
    925 A.2d 506 (Del. Ch. 2006)...................................................................................18

*In re CEI Roofing, Inc.*,
    315 B.R. 61 (Bankr. N.D. Tex. 2004) ......................................................................23

*Coie v. Sadkin (In re Sadkin)*,
    36 F.3d 473 (5th Cir. 1994) ......................................................................................12

*In re Cont'l Airlines Corp.*,
    43 B.R. 127 (Bankr. S.D. Tex. 1984) .......................................................................23

*In re EHT US1, Inc.*,
    No. 21-50476, 2021 WL 3828556 (Bankr. D. Del. Aug. 27, 2021) ............18, 19, 21

*In re Extended Stay, Inc.*,
   No. 09-13764-JLG, 2020 WL 10762310 (Bankr. S.D.N.Y. Aug. 8, 2020) ............................ 19

*Ferguson v. Owens*,
   9 Ohio St. 3d 223 (1984) .......................................................................................................... 18

*Ga. Pac. Corp. v. Sigma Serv. Corp.*,
   712 F.2d 962 (5th Cir. 1983) .................................................................................................... 15

*Grupo Mexicano de Desarrollo S.A. v. Alliance Bond Fund, Inc.*,
   527 U.S. 308 (1999) ................................................................................................................... 13

*Hogg v. Walker*,
   622 A.2d 648 (Del. 1993) .......................................................................................................... 18

*Jackson Nat'l Life Ins. Co. v. Kennedy*,
   741 A.2d 377 (Del. Ch. 1999) ................................................................................................... 18

*Janvey v. Alguire*,
   647 F.3d 585 (5th Cir. 2011) ............................................................................................... 12, 19

*Janvey v. Alguire*,
   No. 09-CV-724-N, 2010 WL 11619267 (N.D. Tex. June 10, 2010) .......................................... 22

*JLP-Orange, LLC v. Tuller Square Northpointe, LLC*,
   246 N.E.3d 586 (Ohio Ct. App. 2024) ...................................................................................... 17

*Kalsi Eng'g, Inc. v. Davidson*,
   No. H-14-1405, 2014 WL 12540550 (S.D. Tex. Sept. 2, 2014) ......................................... 14, 20

*LRC Realty, Inc. v. B.E.B. Properties*,
   166 N.E.3d 37 (Ohio Ct. App. 2020) ........................................................................................ 17

*Miller Med. Sales, Inc. v. Worstell*,
   No. 91AP-610, 1992 WL 31988 (Ohio Ct. App. Feb. 18, 1992) ............................................... 18

*In re Mission of Care, Inc.*,
   164 B.R. 877 (Bankr. D. Del. 1994) .......................................................................................... 17

*In re Padilla*,
   379 B.R. 643 (Bankr. S.D. Tex. 2007) ...................................................................................... 22

*Pheasant v. Zaremba*,
   398 B.R. 583 (N.D. Ohio 2008) ................................................................................................. 14

*Schmidt v. Platinum Partners Value Arbitrage Fund LP (In re Black Elk Energy Offshore Operations, LLC)*,
   No. 15-34287, Dkt. 7 (Bankr. S.D. Tex. 2016) ............................................................. 7, 12, 13

*Sommers v. Harvie* (*In re 338 L.T.D., LLC*),
    No. 22-31327, Dkt. 12 (Bankr. S.D. Tex. 2022)..................................................6, 13

*Sommers v. Sorce* (*In re Major Funding Corp.*),
    126 B.R. 504 (Bankr. S.D. Tex. 1990) ...........................................................16

*In re Team Sys. Int'l, LLC*,
    2023 WL 1428572 (Bankr. D. Del. Jan. 31, 2023)........................................13, 21

*Tisino v. R&R Consulting & Coordinating Grp. LLC*,
    478 F. App'x 183 (5th Cir. 2012) ...................................................................22

*TitleMax of Texas, Inc. v. City of Dallas*,
    142 F.4th 322 (5th Cir. 2025) ........................................................................14

*Winter v. Nat. Res. Def. Council, Inc.*,
    555 U.S. 7 (2008).............................................................................................12

**Statutes and Rules**

11 U.S.C. § 105.....................................................................................................12

11 U.S.C. § 542.....................................................................................................15

11 U.S.C. § 544.................................................................................................7, 16

11 U.S.C. § 548.................................................................................................16, 17

11 U.S.C. § 550.......................................................................................................7

28 U.S.C. § 157.......................................................................................................7

28 U.S.C. § 1334.....................................................................................................7

28 U.S.C. § 1408.....................................................................................................7

28 U.S.C. § 1409.....................................................................................................7

6 Del. Code § 1304............................................................................................16, 17

Ohio Rev. Code Ann. § 1336.04.......................................................................16, 17

Fed. R. Bankr. 7065.........................................................................................11, 23

Fed. R. Civ. P. 65 ..........................................................................................*passim*

Local Rule 7008-1....................................................................................................7

TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE LOPEZ:

First Brands Group, LLC and its debtor affiliates, as debtors and debtors-in-possession in the above-captioned chapter 11 cases (the "**Plaintiffs**" or the "**Debtors,**" together with non-debtor affiliates, "**First Brands**" or "**Company**"), by their attorneys, Weil, Gotshal & Manges LLP, file this *ex parte* Emergency Application for Injunctive Relief, Including an Emergency Motion for a Temporary Restraining Order and a Preliminary Injunction ("**Application**") seeking immediate injunctive relief in the form of a temporary restraining order followed by a preliminary injunction freezing the assets of Patrick James and any and all companies he owns and controls in connection with the misappropriation and potential dissipation of funds belonging to the Debtors' estates. The Application is supported by the Affidavit of the Debtors' Interim Chief Executive Officer Charles Moore (the "**Moore Affidavit**" or "**Moore Aff.**"), filed herewith. In support hereof, the Debtors respectfully show the Court as follows:

## I.      INTRODUCTION

1.      As the Debtors explain in their Adversary Complaint in this action, Patrick James— First Brands' founder and former Chief Executive Officer—secured billions of dollars of financing for First Brands by means of fraud, only to turn around and enrich himself and his family by misappropriating hundreds of millions of dollars from First Brands. As a result of Mr. James' misconduct, First Brands was left with just $12 million in cash in its bank accounts when the Debtors filed for bankruptcy.

2.      The Debtors' Adversary Complaint asserts eight different causes of action, including actual and constructive fraudulent transfer, in an effort to recover, for the benefit of the Debtors' estates and their creditors, the funds Mr. James misappropriated.

3.      Immediate relief is needed from this Court in order for the Debtors to effectively recover those funds. Mr. James is a sophisticated party with control over a complex web of

interconnected entities—some of which received funds directly from First Brands and are named as Defendants in this action—and hundreds of bank accounts. Mr. James, a Malaysian national, has both the opportunity and resources to quickly move the misappropriated funds across entities and geographies, and potentially beyond the reach of the Debtors and this Court's jurisdiction. Unless Mr. James' accounts and the accounts of entities under his ownership or control are frozen, the misappropriated funds that rightly belong to First Brands and its creditors may become exceedingly difficult, if not impossible, to ever recover.

4.      The Debtors readily satisfy the standard for securing a temporary restraining order and preliminary injunction. Mr. James' fraudulent representations to First Brands' lenders and misappropriation of First Brands' funds for personal use (including when First Brands was approaching insolvency) are unlawful on multiple grounds, as the Debtors describe in great detail in their Adversary Complaint and the Moore Affidavit. There can be no legitimate explanation for Mr. James' actions. Injunctive relief is critical to protecting the estates' property and to ensuring that Mr. James is unable to dissipate the misappropriated funds beyond the reach of First Brands and its creditors. For his part, Mr. James can claim no entitlement to retain the proceeds of his unlawful efforts. The public interest, moreover, favors ensuring the integrity of the bankruptcy process and preventing fraudsters from absconding with their ill-gotten gains.

5.      For these reasons, this situation is just like numerous others in which this Court has ordered exactly the relief the Debtors seek here—a freeze of Patrick James' assets, the assets in the Patrick James Trust, and the assets of any entities he owns or controls—to preserve the value of a bankruptcy estate from the risk of further, and potentially permanent, diminishment. *See, e.g.*, *Sommers v. Harvie* (*In re 338 L.T.D., LLC*), No. 22-31327, Dkt. 12 (Bankr. S.D. Tex. 2022) (issuing an order freezing assets, or transfer of such assets, in the possession of the sole member and

manager of the debtor and entities "owned or controlled by [him]" due to risk to the estate); *Schmidt v. Platinum Partners Value Arbitrage Fund LP* (*In re Black Elk Energy Offshore Operations, LLC*), No. 15-34287, Dkt. 7 (Bankr. S.D. Tex. 2016) (freezing assets of defendants, the majority shareholders of the debtor, where plaintiffs alleged the existence of fraudulent transfers).

6.     The Debtors accordingly seek a temporary restraining order and preliminary injunction to freeze and prevent the use or transfer of any and all bank accounts and other property owned or controlled by Patrick James, or by entities owned or controlled by him.

## II.     JURISDICTION AND VENUE

7.     This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. § 1334 and 11 U.S.C. §§ 544 and 550.

8.     This adversary proceeding is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (B), (H), and (O). In accordance with Bankruptcy Local Rule 7008-1, the Debtors consent to the entry of final orders or judgment by the Court if it is determined that the Court, absent consent of the parties, cannot enter final orders or judgment consistent with Article III of the United States Constitution.

9.     Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## III.     BACKGROUND

10.     On September 28, 2025 ("**Petition Date**"), the Debtors and 98 affiliates commenced the above-captioned chapter 11 cases.[2]

---

[2] The background of these proceedings and of this adversary proceeding are described at greater length in the Debtors' First Day Filings, the Adversary Complaint, and the Moore Affidavit. The Debtors accordingly provide only a brief summary of the relevant facts herein.

11.     As of the Petition Date, First Brands had approximately $6.1 billion in aggregate principal of on-balance sheet outstanding funded debt obligations, at least $2.3 billion in aggregate "off-balance sheet" financings incurred through special purpose vehicles, and approximately $800 million in unsecured supply chain financing liabilities. First Brands additionally had at least $2.3 billion in factoring liabilities. Compl. ¶ 37; Moore Aff. ¶ 8. As of the Petition Date, however, the Debtors had an aggregate amount of only approximately $12 million in cash in their corporate bank accounts. Compl. ¶ 12; Moore Aff. ¶ 9.

12.     As detailed in the Adversary Complaint and Moore Affidavit, the Debtors' ongoing investigation[3] has uncovered that Mr. James fraudulently misrepresented First Brands' financial condition in order to secure billions of dollars of funding from lenders. *First*, Mr. James caused First Brands to incur at least $2.3 billion in accounts receivable factoring liabilities based, at least in significant part, on non-existent or doctored invoices. Compl. ¶ 5; Moore Aff. ¶ 17. *Second*, Mr. James engaged in financing transactions involving special purpose vehicles ("**SPVs**"), which incurred another at least $2.3 billion in debt, which at least in part was by double-pledging collateral that First Brands could not itself borrow against a second time. Compl. ¶ 6; Moore Aff. ¶ 18.

---

[3] Since the Petition Date, the Debtors and their advisors have been working tirelessly to stabilize operations, confirm the value of assets, and improve the performance of the business for customers, suppliers, employees and all other stakeholders, while at the same time conducting an investigation of the Debtors' pre-petition operations while the Debtors were under the control of their former CEO, Patrick James. To date, that investigation has involved, among other steps: (a) the collection of over 7,000,000 documents and other data from 37 custodians and email listservs; (b) the pursuit of bank account records from more than 600 bank accounts; (c) the collection of devices from on-site employees and the coordination of the collection of devices from remote employees; and (d) interviews with current and former employees. Compl. ¶ 41. That ongoing investigation revealed Mr. James and the other Defendants' misconduct and raised emergent concerns about the need to take immediate action to prevent Mr. James and the other Defendants from further pilfering and dissipating funds belonging to the Debtors' estates and their creditors.

13.     Having secured funds for First Brands by fraud, Mr. James then proceeded to misappropriate First Brands' funds for his and his family's personal use. Compl. ¶ 46; Moore Aff. ¶ 33. Notably, the Debtors have already identified millions of dollars that were transferred from First Brands to various entities owned and/or controlled by Mr. James and his family. Compl. ¶ 62; Moore Aff. ¶ 33.

14.     As detailed in the Adversary Complaint, Mr. James' dissipation of First Brands' funds for his own personal use was directly connected to his efforts to secure funding for First Brands. Compl. ¶ 71; Moore Aff. ¶ 40.

15.     For example, at the start of the day on April 4, 2025, Carnaby FA, an SPV that sits under Viceroy Private Capital, LLC (both siloed SPVs that are not subsidiaries of First Brands Group, LLC), had just $4,833.98 in its account. Compl. ¶ 72; Moore Aff. ¶ 41. On that same day, Carnaby FA received $67.2 million as part of a purported sale-leaseback transaction from Onset Financial Inc., ostensibly collateralized by First Brands' assets. Compl. ¶ 72; Moore Aff. ¶ 41. Then, also on April 4, 2025, Carnaby FA—an entity which, that very morning had less than five thousand dollars in its bank account—paid Defendant Patrick James Trust approximately $17 million. Compl. ¶ 72; Moore Aff. ¶ 41.

16.     Upon information and belief, Mr. James also intentionally commingled First Brands' business accounts with personal funds and used First Brands' funds for his and his family's personal expenses and personal businesses. Compl. ¶ 77; Moore Aff. ¶ 45.

17.     The Debtors have identified payments that were made directly from First Brands' accounts to Mr. James, his family, and their personal staff and businesses. These include over approximately $2 million in 2025 in payroll for Mr. James' "family office," at least $3 million paid towards rent of Mr. James' New York City townhouse from 2019 through 2024, and

approximately $500,000 paid to Mr. James' private celebrity chef in 2025. Compl. ¶ 80; Moore Aff. ¶ 48.

18.     Other payments were made from First Brands to entities controlled by Mr. James, named as Defendants in this action. For example, Battery Park Holdings LLC ("**Battery Park**")—which is not directly affiliated with First Brands—is 100% owned by Mr. James and is described as a "personal" business in Mr. James' financial documents. Compl. ¶ 82; Moore Aff. ¶ 51. On information and belief, more than $10 million was transferred from First Brands to Battery Park from 2018 to 2025 to pay Mr. James and his family's personal expenses. Compl. ¶ 82; Moore Aff. ¶ 51.

19.     From 2018 to 2025, approximately $35 million was paid to Larchmont LLC, another entity owned and controlled by Mr. James that is not affiliated with First Brands and appears to bear no legitimate business relationship to it. Compl. ¶ 85; Moore Aff. ¶ 54. Significant additional transfers totaling in the millions of dollars were also made from First Brands to Mr. James' real estate holding company (Albion Realty LLC) over the same period. Compl. ¶ 85; Moore Aff. ¶ 54.

20.     Money transferred from First Brands to Mr. James also occurred in close proximity to his acquisition of various real estate properties and cars.[4] Compl. ¶ 86; Moore Aff. ¶ 55. For example, in the two months prior to purchasing a home in Malibu on September 13, 2019, various entities unrelated to First Brands over which Mr. James has complete control received disbursements from First Brands amounting to several million dollars. Compl. ¶ 86; Moore Aff. ¶ 55. Likewise, in the two months prior to purchasing a home in the Hamptons on

---

[4] On information and belief, Mr. James owns at least seven real estate properties and an extensive car collection, including at least seventeen exotic cars. Compl. ¶ 87.

August 31, 2021, Mr. James received over $1 million from First Brands. Compl. ¶ 86; Moore Aff. ¶ 55.

21.     The transaction documents that the Debtors have uncovered to date fail to show that Mr. James' transfers were made for any legitimate business purpose. Compl. ¶ 88; Moore Aff. ¶ 57.

22.     Upon information and belief, many of the transactions seem to have been made without any contemporaneous documentation of their purpose at all. Compl. ¶ 89; Moore Aff. ¶ 58.

23.     Mr. James continues to have the ability to further deplete the funds by spending or diverting money that has been transferred to accounts and entities under his control. If his assets are not frozen, there is an immediate and significant risk that he will transfer the estates' funds to entities outside of the United States, potentially in ways that may make these funds difficult or impossible to recover in First Brands' bankruptcy proceedings. Compl. ¶ 90; Moore Aff. ¶ 59.

24.     Mr. James, moreover, is a Malaysian national with hundreds of millions of dollars at his disposal and is reported to be the subject of an investigation by the United States Attorney for the Southern District of New York, and others, giving rise to significant concerns regarding abscondment. Compl. ¶ 91; Moore Aff. ¶ 60.

## IV.     ARGUMENT

### A.  Legal Standard

25.     Federal Rule of Civil Procedure 65, made applicable to adversary proceedings in bankruptcy by Federal Rule of Bankruptcy Procedure 7065, allows a bankruptcy court to issue temporary restraining orders and preliminary injunctions. *See* Fed. R. Bankr. P. 7065 ("Fed. R. Civ. P. 65 applies in an adversary proceeding."); Fed. R. Civ. P. 65 (empowering courts to issue temporary restraining orders and preliminary injunctions).

26.     Section 105 of the Bankruptcy Code, moreover, authorizes the bankruptcy court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." 11 U.S.C. § 105. Under this authority, bankruptcy courts may "fashion…orders as are necessary to further the substantive provisions of the Bankruptcy Code." *Coie v. Sadkin (In re Sadkin)*, 36 F.3d 473, 478 (5th Cir. 1994) (quoting *Chiasson v. Bingler* (*In re Oxford Mgmt. Inc.*), 4 F.3d 1329, 1333 (5th Cir. 1993)).

27.     To secure a temporary restraining order or preliminary injunction, a movant must demonstrate "(1) a substantial likelihood of success on the merits, (2) a substantial threat of irreparable injury if the injunction is not issued, (3) that the threatened injury…outweighs any harm that will result if the injunction is granted, and (4) that the grant of an injunction will not disserve the public interest." *Janvey v. Alguire*, 647 F.3d 585, 595 (5th Cir. 2011) (citing *Byrum v. Landreth*, 566 F.3d 442, 445 (5th Cir. 2009)); *see generally Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20, 22 (2008). To secure a temporary restraining order without notice to the adverse party, a movant must additionally "show that immediate and irreparable injury, loss, or damage will result," and show why notice should not be required. Fed. R. Civ. P. 65(b)(1).

28.     It is well within this Court's power to freeze the assets of a defendant accused of a fraudulent transfer or similar equitable claim, including without notice to the defendant, in order to protect a debtor's bankruptcy estate from the risk of further diminishment, as this Court has recognized time and again in awarding such relief. *See, e.g.*, *Schmidt v. Platinum Partners Value Arbitrage Fund LP* (*In re Black Elk Energy Offshore Operations, LLC*), No. 15-34287, Dkt. 7

(Bankr. S.D. Tex. 2016); *Sommers v. Harvie* (*In re 338 L.T.D., LLC*), No. 22-31327, Dkt. 12

(Bankr. S.D. Tex. 2022).[5]

29.     In *Schmidt*, for example, the trustee alleged that defendants—who were the debtor's

majority shareholders—manipulated transactions to "hinder, delay, and defraud" and "siphon[]

off" money from the estate. *Schmidt*, No. 15-34287, Dkt. 7, at 1. The court was "concerned that—

if a hearing [was] scheduled—the assets [would] be further dissipated before a hearing [could] be

conducted" due to defendants' alleged "pattern of fraud and abuse." *Id.* at 3. In ordering a freeze

of the defendants' assets, the court recognized that, "[i]f the funds are not frozen, and based on the

illegal financial maneuvering demonstrated by the [motion], the Court finds that the funds are

likely to leave the United States and this Court's practical ability to control them." *Id.*

30.     Similarly, in *Sommers v. Harvie* (*In re 338 L.T.D., LLC*), No. 22-31327, Dkt. 12

(Bankr. S.D. Tex. 2022), the court froze defendants' assets based on allegations that defendants,

including the sole member and manager of the debtor and his related entities, engaged in fraudulent

transfers involving "the continual shifting of assets." *See id.* Dkt. 5, at 1-2. The court found that

an injunction freezing defendants' assets was necessary to maintain the status quo during the

pendency of litigation to recover the transferred funds. *Id.* Dkt. 12.

31.     Bankruptcy courts outside this Circuit have likewise found it appropriate to issue

injunctions freezing a defendant's assets under similar circumstances. *See, e.g.*, *In re Team Sys.*,

2023 WL 1428572, at *8 (freezing the assets of defendants, who included the debtors' owners and

related entities, based on allegations of fraudulent transfers); *Ball v. Soundview Composite LTD*

---

[5] While the Supreme Court's decision in *Grupo Mexicano de Desarrollo S.A. v. Alliance Bond Fund, Inc.*, 527 U.S. 308 (1999), holds that courts may not freeze a defendant's assets where a plaintiff's claim is purely legal in nature, the decision is clear that there is no such limitation where, as here, a plaintiff seeks equitable relief, *see id.* at 325. *See In re Team Sys. Int'l, LLC*, 2023 WL 1428572, at *7–8 (Bankr. D. Del. Jan. 31, 2023) (distinguishing *Grupo Mexicano*).

*(In re Soundview Elite LTD) et al.*, 543 B.R. 78, 120 (Bankr. S.D.N.Y 2016) ("[I]t is in the public interest that commercial obligors do not dissipate their assets—or, when they have already done so, that they not do it again."). Courts have likewise ordered similar preliminary relief in analogous fraudulent transfer cases outside the bankruptcy context. *See, e.g.*, *Kalsi Eng'g, Inc. v. Davidson*, No. H-14-1405, 2014 WL 12540550, at *2 (S.D. Tex. Sept. 2, 2014) (granting injunctive relief "to maintain the status quo and prevent the dissipation of funds [allegedly] stolen by [Defendant] and assets acquired with such funds").

32.    These courts consistently recognize that preliminary relief freezing a defendant's assets is appropriate where there is "a substantial threat that [the defendant] will irretrievably dissipate [wrongfully acquired] funds and assets in the near future" and "no other remedy will fully and adequately preserve [the] property." *Id.*

33.    Just as in other cases in which courts have ordered an asset freeze, the Debtors here have made a showing that they are entitled to such relief and that it is critical to preserving the value of the estate for the benefit of the Debtors, their creditors, and their other stakeholders.

**B. The Debtors are Likely to Succeed on the Merits**

34.    To show a likelihood of success on the merits, a movant "must present a prima facie case, but need not prove that they are entitled to summary judgment." *TitleMax of Texas, Inc. v. City of Dallas*, 142 F.4th 322, 329 (5th Cir. 2025) (quoting *Daniels Health Scis., L.L.C. v. Vascular Health Scis., L.L.C.*, 710 F.3d 579, 582 (5th Cir. 2013)) (alterations adopted). For example, if a party brings a claim alleging a fraudulent transfer, "the trial court may find substantial likelihood of success on the merits when it is 'presented with evidence of intent to defraud the creditor.'" *Janvey*, 657 F.3d at 596 (citation omitted); *see also Pheasant v. Zaremba*, 398 B.R. 583, 589 (N.D. Ohio 2008) (finding under Ohio law that a plaintiff was likely to succeed on their fraudulent transfer claim because the transfer was made "with intent to defraud the Trustee"); *Applied*

*Energetics, Inc. v. Farley*, No. CV 2018-0489-TMR, 2019 WL 334426 at *9-10 (Del. Ch. Jan. 23, 2019) (similar under Delaware law).

35.     The Debtors have more than carried their burden to show a likelihood of success on their claims. The Debtors bring a variety of federal and state-law claims that ultimately hinge on the same simple fact: there is no legitimate business purpose for Mr. James and the other Defendants to have depleted the Debtors' estates for their own benefit. Mr. James is in possession of or controls funds that rightfully belong to the Debtors, and the Debtors are entitled to their return.

36.     *First*, the Debtors are likely to succeed on their claim that Defendants are required to turn over property misappropriated from the Debtors. Under the Bankruptcy Code, any entity in possession of a debtor's property or an entity that owes a debt to a debtor is required to turnover such property or pay such debt. And the trustee or debtor-in-possession is entitled to bring an adversary proceeding to compel the turnover of that property. *See* 11 U.S.C. § 542 ("[A]n entity, other than a custodian, in possession, custody, or control, during the case, of property that the trustee may use, sell, or lease … shall deliver to the trustee, and account for, such property or the value of such property. . . .").

37.     Defendants and affiliated entities under Mr. James' control or ownership are in control of property that rightfully belongs to the bankruptcy estate. Compl. ¶ 121; Moore Aff. ¶ 59. Mr. James can show no lawful entitlement to the funds he misappropriated from First Brands (contributing to First Brands' insolvency). The Debtors thus have a strong likelihood of success securing the turnover of such property. *See Ga. Pac. Corp. v. Sigma Serv. Corp.*, 712 F.2d 962, 968 (5th Cir. 1983) (holding that all property of the estate must be turned over).

38.     *Second*, the Adversary Complaint and Moore Affidavit more than suffice to show a likelihood of success on the Debtors' claims that Defendants' transfers are avoidable as actual fraud. *See, e.g.*, *Sommers v. Sorce (In re Major Funding Corp*.), 126 B.R. 504, 508 (Bankr. S.D. Tex. 1990) (finding fraud where, as here, "Defendant controlled the corporation and its finances[,]. . . funds from various corporate accounts were commingled and on all of the subject transactions, [and] [D]efendant intentionally used corporate funds for his and/or his family's personal benefit."); *see also In re Arabella Petroleum Co., LLC*, 647 B.R. 851, 865 (Bankr. W.D. Tex. 2022).

39.     While a claim of actual fraud requires the Debtors to show that Defendants had "actual intent to hinder, delay, or defraud" creditors, 11 U.S.C. § 548(a)(1)(A), courts typically consider a variety of nonexclusive factors, or "badges of fraud." *See* Ohio Rev. Code Ann. § 1336.04(B) and notes; 6 Del. Code § 1304; 11 U.S.C. § 544(b). Here, the Debtors have alleged Mr. James' actual fraud with uncommon detail. As the Adversary Complaint describes, Mr. James engaged in multiple different efforts to misrepresent First Brands' finances in order to fraudulently secure billions of dollars of funds while at the very same time misappropriating funds from First Brands for his own personal use. Compl. ¶ 3; Moore Aff. ¶ 34. Mr. James' transfers, conceived in fraud, bear many hallmarks of fraud, including that the transfers were made to an insider, were not made for reasonably equivalent value, were made as the Debtors approached insolvency, were made without proper documentation, and involved the commingling of personal and business funds. On this claim, too, the Debtors are likely to succeed on the merits.

40.     *Third*, with respect to the Debtors' constructive fraud claim, the Bankruptcy Code and state law allows courts to avoid transfers if they are made by a debtor in exchange for less than reasonably equivalent value at a time when the debtor was either (1) insolvent, (2) unable to pay its debts as they came due, or (3) had an unreasonably small capital. *See In re Arabella Petroleum*

*Co.*, 647 B.R. 851, 865 (Bankr. W.D. Tex. 2022); *see also* 11 U.S.C. § 548; Ohio Rev. Code Ann. § 1336.04(A)(2); 6 Del. Code § 1304(a)(2).

41.     That is plainly the case here.  For example, over $700 million was funneled from First Brands directly to Mr. James and his affiliated entities from 2018 to 2025. Over $600 million was distributed directly from First Brands' bank accounts to Defendant Patrick James Trust, a trust held by Mr. James, for no consideration and for no valid business purpose. Compl. ¶ 70; Moore Aff. ¶ 39.  This is an archetypal case of constructive fraudulent transfer.

42.     *Fourth*, the circumstances of Mr. James' misappropriation of the Debtors' funds readily support several of the Debtors' other claims, including for money had and received, unjust enrichment, and constructive trust. The Debtors' money had and received claim "looks solely at the inquiry whether the defendant holds money which belongs to the plaintiff." *Bank of Saipan v. CNG Fin. Corp.*, 380 F.3d 836, 840 (5th Cir. 2004) (citations omitted); *see also In re Mission of Care, Inc.*, 164 B.R. 877, 879 (Bankr. D. Del. 1994) (finding that a money had and received claim requires (1) "each payment benefitted [the defendant]," and (2) "it would be inequitable not to reimburse [the plaintiff] for these benefits."); *see also, e.g.*, *LRC Realty, Inc. v. B.E.B. Properties*, 166 N.E.3d 37, (Ohio Ct. App. 2020). That is the case here, as Mr. James has misappropriated significant sums belonging to First Brands for his own use. Compl. ¶ 10; Moore Aff. ¶ 45.

43.     The Debtors' unjust enrichment claim is similar: Defendants received a significant economic benefit at the Debtors' expense without providing anything whatsoever of value in return. *See* Compl. ¶ 128; Moore Aff. ¶ 36. This is the archetypal case of unjust enrichment. *See generally JLP-Orange, LLC v. Tuller Square Northpointe, LLC*, 246 N.E.3d 586, 596 (Ohio Ct. App. 2024) ("The doctrine of unjust enrichment 'applies when a benefit is conferred and it would be inequitable to permit the benefitting party to retain the benefit without compensating the

conferring party.'" (citation omitted)); *Jackson Nat'l Life Ins. Co. v. Kennedy*, 741 A.2d 377, 393 (Del. Ch. 1999) (similar). And a constructive trust—which functions as both an independent cause of action and a remedy for a claim of unjust enrichment—is appropriate to ensure that Defendants cannot benefit from the fruits of their unjust enrichment, and ensure that the Debtors are able to recover Defendants' ill-gotten gains. *See Ferguson v. Owens*, 9 Ohio St. 3d 223, 226 (1984) ("A constructive trust is, in the main, an appropriate remedy against unjust enrichment. This type of trust is usually invoked when property has been acquired by fraud … [It] may also be imposed where it is against the principles of equity that the property be retained by a certain person even though the property was acquired without fraud."); *Hogg v. Walker,* 622 A.2d 648, 652 (Del. 1993) (same).

44.     *Fifth*, given Mr. James' sophistication, and substantial resources, an accounting is appropriate—and urgently needed. *See Carlson v. Hallinan*, 925 A.2d 506, 537 n.211 (Del. Ch. 2006) (An equitable accounting is appropriate where "[a ]fiduciary has directed corporate funds to his or her benefit or has personally profited from the improper use of corporate property" (internal quotation marks and citation omitted)); *Miller Med. Sales, Inc. v. Worstell*, No. 91AP-610, 1992 WL 31988, at *6 (Ohio Ct. App. Feb. 18, 1992); *see also Avande, Inc. v. Evans*, C.A. No. 2018-0203-AGB, 2019 WL 3800168 (Del. Ch. Aug. 13, 2019). Over the last decade, Mr. James has orchestrated at least hundreds of transfers for millions, if not billions, of dollars between hundreds of bank accounts in his control. Compl. ¶ 15; Moore Aff. ¶ 33. Tracing the Debtors' assets that are now improperly in Defendants' possession will be extremely difficult, if not impossible, through the traditional discovery process. Requiring Mr. James to provide an account to the Debtors and the Court of his dissipation of the estates' funds is critical to facilitating their recovery for the benefit of the estates' creditors. *See In re EHT US1, Inc.*, 2021 WL 3828556, at *2 (holding that

the plaintiff was entitled to preliminary injunctive relief and an accounting because "[a]fter wrongfully obtaining the funds, [the individual defendants] transferred them to Defendant EHT Asset Management, an entity they wholly owned, and then caused the funds to disappear"); *see also In re EHT US1, Inc.*, No. 21-50476, Dkt. 72 at 3 (Bankr. D. Del. Aug. 27, 2021) (ordering that "[t]he Defendants shall account for such funds or assets to the Plaintiff.").

45.     *Finally*, the Debtors' illegal dividend claim is likely to succeed as well. Mr. James' distributions from First Brands to himself, the Patrick James Trust, and other entities under his control were knowingly and purposefully made while First Brands "did not have a surplus or [was] insolvent." *In re Extended Stay, Inc*., No. 09-13764-JLG, 2020 WL 10762310, at *95 (Bankr. S.D.N.Y. Aug. 8, 2020); *see* Compl. ¶ 117; Moore Aff. ¶ 47. Mr. James thus has no defense that the transfers from First Brands to his personal accounts were proper dividends to him in his capacity as First Brands' ultimate owner.

46.     The Debtors have offered detailed allegations, with factual support in the Moore Affidavit, to support their claims. The Debtors have more than carried their burden to show a likelihood of success on any one of their claims. Mr. James' actions have no legitimate business purpose and the Debtors are likely to succeed on all eight claims.

## C.  The Debtors Will Suffer Irreparable Harm Without Immediate Relief

47.     The Debtors must also "demonstrate that if the. . . court denied the grant of [an] injunction, irreparable harm would result." *Janvey*, 647 F.3d at 600. The Fifth Circuit has made clear, however, "that where a district court has determined that a meaningful decision on the merits would be impossible without an injunction, the district court may maintain the status quo and issue a preliminary injunction to protect a remedy, including a damages remedy, when the freezing of the assets is limited to the property in dispute or its direct, traceable proceeds." *Id.* Thus, courts in this district have found that where a "defendant intends to dissipate his assets to make a judgment

awarding damages uncollectible," such circumstances "may give rise to the irreparable harm required for a preliminary injunction." *Amegy Bank Nat'l Ass'n v. Monarch Flight II, LLC*, No. H-11-3218, 2011 WL 6091807, at *6 (S.D. Tex. Dec. 7, 2011) (internal quotation marks and citation omitted).

48.     Here, Mr. James' past actions, sophistication, and resources create a substantial risk that he will dissipate these assets in an effort to make a judgment awarding damages uncollectible. Mr. James has a demonstrated history of transferring and commingling funds between and among personal and business accounts. Mr. James is a Malaysian national with access to multiple personal business entities and trusts, as well as numerous bank accounts. The Debtors have every reason to think that he is likely to dissipate the misappropriated funds, especially given the heightened scrutiny of his actions coming from the Debtors' own investigation and a reported investigation by the United States Attorney for the Southern District of New York, and others. Compl. ¶ 91; Moore Aff. ¶ 60.

49.     Moreover, Mr. James and his family spend estate assets at an alarming rate, including on a variety of luxuries. Compl. ¶ 10; Moore Aff. ¶ 48. Continuing to allow Mr. James and his family to fund their lavish lifestyle using the funds wrongfully taken from the estate creates the possibility that those funds will never be recovered.

50.     As in the cases discussed above, immediate injunctive relief in the form of an asset freeze is required to avoid irreparable harm. *See, e.g.*, *A.T.N. Industries, Inc. v. Gross*, 632 F. App'x 185, 191 (5th Cir. 2015) (affirming finding of irreparable harm where defendant had a historical practice of "transferring money internationally, suggesting a high risk that funds allegedly belonging to plaintiffs could disappear . . ." absent emergency injunctive relief to freeze defendant's assets); *Kalsi Eng'g, Inc.*, 2014 WL 12540550, at *2 (finding that plaintiff faced

irreparable harm absent a preliminary injunction freezing defendant's assets where "funds wrongfully taken from" plaintiff and "assets acquired with such funds" were in defendant's "possession, custody, or control" with a "substantial threat that [defendant would] irretrievably dissipate such funds and assets in the near future"); *In re Soundview Elite Ltd.*, 543 B.R. at 118 (holding that an asset freeze injunction should issue in part because the plaintiff "will suffer grievously if [the defendant's] funds are dissipated"); *In re Team Systems*, 2023 WL 1428572, at *12 (holding that an asset freeze injunction was "the only way of protecting the plaintiff from harm"); *In re EHT US1*, Inc., 2021 WL 3828556, at *2–3 (holding that the plaintiff was entitled to an asset freeze injunction and plaintiffs faced irreparable harm because the defendants "wrongfully obtained the funds . . . and then caused the funds to disappear"). Notably, the Delaware Unified Fraudulent Transfer Act also provides that a creditor in a fraudulent transfer action may obtain prejudgment attachment as an additional equitable remedy. *See In re BYJU's Alpha, Inc.,* 661 B.R. 109, 123 (Bankr. D. Del. 2024) (holding that "[t]he State of Delaware allows the type of prejudgment asset attachment sought by the Debtor" and holding that an injunction "designed to freeze the assets [was] appropriate" because the "[d]efendants ha[d] repeatedly demonstrated willful disregard for the Debtor's attempt to locate these missing funds" and "the [d]efendants ha[d] refused to comply with this Court's orders to disclose the location of the funds").

### D.  An Injunction Will Not Cause Harm to Defendants and the Balance of Equities Favors an Injunction

51.     Defendants will not suffer harm if a temporary restraining order and subsequent preliminary injunction freezing their assets is entered.

52.     Mr. James and the other Defendants can have no legitimate claim to retain the proceeds of his unlawful activity. The funds he misappropriated are not rightly his and he has no

entitlement to hundreds of millions, if not billions, of dollars he has wrongfully taken from First Brands.

53.     In any event, any harm that Defendants would potentially suffer as a result of a preliminary injunction is far outweighed by the harm the Debtors have already suffered and will continue to suffer without such relief. *See Tisino v. R&R Consulting & Coordinating Grp. LLC*, 478 F. App'x 183, 185 (5th Cir. 2012) (finding that "an asset freeze by preliminary injunction is an appropriate method to assure the meaningful, final equitable relief sought") (internal quotation marks and citation omitted).

54.     Here, the high risk that assets rightfully belonging to the Debtors' estates will be irreversibly dissipated far outweighs any concern Defendants may have "of not being able to spend or use the frozen assets pending resolution of the merits of [the] case." *Janvey v. Alguire*, No. 09-CV-724-N, 2010 WL 11619267, at *8 (N.D. Tex. June 10, 2010) (finding that the balance of equities warrants freezing defendant's assets given the "possible dissipation of one of the few remaining assets that may eventually be available").

**E.  Granting Injunctive Relief Is in the Public Interest**

55.     Finally, the relief the Debtors seek is in the public interest. Immediate injunctive relief will ensure that the Court is able to oversee an orderly administration of the estate for the benefit of the Debtors and their creditors and prevent Defendants from further enjoying or dissipating the proceeds of their unlawful activity. *See In re Padilla*, 379 B.R. 643, 658 (Bankr. S.D. Tex. 2007) (holding that "the primary purpose of bankruptcy laws is to ensure an efficient and just administration of a debtor's affairs").

56.     The Debtors have thus satisfied the relevant factors for securing preliminary relief, which will protect the property of the bankruptcy estate pending this Court's adjudication of the

merits of Debtors' claims and will help ensure that the Debtors can recover all property rightfully belonging to the estate.

## V.    EMERGENCY RELIEF, NOTICE, AND RELIEF FROM BOND REQUIREMENT

57.    The Debtors accordingly ask the Court for a temporary restraining order and ask that the Court schedule, at the earliest possible time, a hearing on the Debtors' request for a preliminary injunction.

58.    Given the significant risk of immediate and irreparable harm that will result from further dissipation of the Debtors' assets were the Defendants to be given advance notice of this motion, it is appropriate to immediately award this relief without notice to the Defendants. *See* Fed. R. Civ. P. 65(b)(1); Fed. R. Bankr. 7065. Debtors are filing herewith an attorney certification pursuant to Federal Rule of Bankruptcy Procedure 7065 and Federal Rule of Civil Procedure 65(b)(1)(B) certifying "the reasons why notice should not be required." Fed. R. Civ. P. 65(b)(1)(B).

59.    The Debtors are not required to post a bond to secure an injunction. Bankruptcy Rule 7065 authorizes "a debtor, trustee, or debtor in possession" to apply for emergency injunctive relief in an adversary proceeding "without complying with [Federal Rule of Civil Procedure 65](c)," Fed. R. Bankr. P. 7065, which ordinarily requires that a movant "give[] security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained," Fed. R. Civ. P. 65(c). Because the Debtors are debtors-in-possession in these proceedings, they are not required to post a bond to secure an injunction. *See, e.g., In re Cont'l Airlines Corp.*, 43 B.R. 127, 130 (Bankr. S.D. Tex. 1984) (holding that under Rule 7065, debtor in Chapter 11 proceeding was not required to post a bond when seeking injunctive relief); *see also, e.g., In re CEI Roofing, Inc.*, 315 B.R. 61, 64 (Bankr. N.D. Tex. 2004) (same).

## VI.    PRAYER FOR RELIEF

60.    For the reasons set forth above, the Debtors ask the Court to grant a preliminary injunction hearing at the Court's earliest convenience, and issue a temporary restraining order (i) freezing any and all bank accounts and other property owned or controlled by Defendants, or any other entity owned or controlled by Defendants, and (ii) preventing Defendants, or any entity or individual within Defendants' ownership or control, from accessing, controlling, selling or otherwise disposing of any and all bank accounts and other property owned or controlled by without in any manner without approval of the Court.[6]

61.    Specifically, and as detailed in the Proposed Order filed herewith, the Debtors ask the Court to order Defendants, entities Defendants own or control, and all financial institutions with possession, custody, and/or control over any proceeds of Defendants' transfers from the estate be stayed, enjoined, and restrained from, with respect to, related to, and/or arising from the Debtors' Property:

      a.   making any payments;

      b.   issuing any checks;

      c.   depositing any checks;

      d.   negotiating any checks;

      e.   cashing any checks;

---

[6] The Debtors acknowledge that the Court may allocate Mr. James a reasonable sum for ordinary living expenses, should he assert that such funds are necessary. *See, e.g.*, *Airn Liquidation Trust Co., LLC v. Media Effective, LLC* (*In re Nat'l Realty Investment Advisors, LLC*), 22-14539, Dkt. 9 (Bankr. D.N.J) (finding that, after imposing the asset freeze, "defendants may [still] use the funds for the payment of ordinary and necessary business or living expenses"); *see also A.T.N. Industries, Inc. v. Gross*, 632 Fed. App'x. 185 (2015) (granting an injunction but providing the enjoined parties, a married couple, a $20,000 monthly allowance for reasonable living expenses). Defendant clearly may not use funds for luxury expenses, such as a private chef or celebrity trainer, neither of which are ordinary nor necessary.

f.    spending any proceeds;

g.    making any transfers; and

h.    making any distributions, without the Court's express permission.


Respectfully submitted on the 3rd day of November, 2025.

    /s/  Clifford W. Carlson
WEIL, GOTSHAL & MANGES LLP
Gabriel A. Morgan (24125891)
Clifford W. Carlson (24090024)
700 Louisiana Street, Suite 3700
Houston, Texas 77002
Telephone:  (713) 546-5000
Facsimile:  (713) 224-9511
Email:   gabriel.morgan@weil.com
        clifford.carlson@weil.com

-and-

WEIL, GOTSHAL & MANGES LLP
Matthew S. Barr (admitted *pro hac vice*)
Sunny Singh (admitted *pro hac vice*)
David Lender (*pro hac vice* pending)
Nili T. Moghaddam (*pro hac vice* pending)
Robert Niles-Weed (*pro hac vice* pending)
767 Fifth Avenue
New York, New York 10153
Telephone:  (212) 310-8000
Facsimile:  (212) 310-8007
Email:   matt.barr@weil.com
        sunny.singh@weil.com
        david.lender@weil.com
        nili.moghaddam@weil.com
        robert.niles-weed@weil.com

*Proposed Attorneys for Debtors*
*and Debtors in Possession*