**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

|  |  |  |
|---|---|---|
| In re: | : | Chapter 11 |
| FIRST BRANDS GROUP, LLC, *et al.*, | : | Case No. 25-90399 (CML) |
| Debtors.[1] | : | (Jointly Administered) |
|  | : |  |
|  | : |  |
| FIRST BRANDS GROUP, LLC, *et al.*, | : | Adv. Pro. No. 25-03803 (CML) |
| Plaintiffs | : |  |
| v. | : |  |
| PATRICK JAMES, THE PATRICK JAMES TRUST, ALBION REALTY, LLC, ALESTER TECHNOLOGIES LLC, BATTERY PARK HOLDINGS LLC, LARCHMONT LLC, PEGASUS AVIATION, LLC, MICHAEL BAKER, PETER ANDREW BRUMBERGS, STEPHEN GRAHAM, JOHN AND JANE DOE(S) 1-100, and ABC CORPORATION(S): 1-100, | : | |
| Defendants | : |  |

**PATRICK JAMES AND THE RELATED ENTITIES' REPLY IN SUPPORT OF THEIR
MOTION PURSUANT TO FED. R. CIV. P. 26 AND 45
TO COMPEL JEFFERIES FINANCIAL GROUP INC. TO COMPLY WITH
<u>SUBPOENA DUCES TECUM</u>**

---

[1]     A complete list of the Debtors in these chapter 11 cases (the "**<u>Chapter 11 Cases</u>**") may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/firstbrands.  The Debtors' service address for these chapter 11 cases is 127 Public Square, Suite 5300, Cleveland, OH 44114.

Patrick James and the "Related Entities," i.e., (a) The Patrick James Trust, (b) Albion Realty, LLC, (c) Alester Technologies, LLC, (d) Battery Park Holdings LLC, (e) Larchmont LLC, and (f) Pegasus Aviation LLC (the "**Related Entities**") [2] respectfully submit this reply memorandum of law (the "**Reply**") in further support of their Motion to Compel [ECF No. 125] (the "**Motion**") compliance with the subpoena duces tecum (the "**Subpoena**")[3] that they served on non-party Jefferies Financial Group Inc. ("**Jefferies**" or "**Respondent**")[4] on December 2, 2025, and to respond to Jefferies' Opposition thereto [ECF No. 135] (the "**Opposition**").

## PRELIMINARY STATEMENT

1.      The Debtors commenced this adversary proceeding (the "**Adversary Proceeding**") on the theory that Mr. James and the Related Entities defrauded creditors into lending money to the Debtors.  In their Amended Complaint, the Debtors allege that Defendants "induced third-party lenders to lend to First Brands, including on terms First Brands would never be able to repay, by misrepresenting its true financial condition"; that Defendant "James secured funding from lenders based on false representations that James knowingly and intentionally made about First Brands' financial position"; and that, under Mr. James's leadership, "the same invoice was factored more than once to different third-party factors."  See Am. Compl. ¶¶ 45, 49, 134.

---

[2]     On January 19, 2026, Debtors filed an Amended Complaint in the above captioned adversary proceeding and, as relevant here, removed two entity defendants, Bond Street Asset Management LLC and Ignite Acquisition Holdings LLC.  See Am. Compl. [Dkt. No. 141].

[3]     Patrick James and the Related Entities' Subpoena to Jefferies, Dated December 2, 2025 [Dkt. No. 125-1].

[4]     Jefferies also owns Leucadia Asset Management, LLC, Point Bonita Capital, LAM Trade Finance Group LLC, LAM Trade Finance Group I SPV LLC, and LAM Trade Finance Group II LLC (each a "**Jefferies' Affiliated Entity**," and together, the "**Jefferies Affiliated Entities**") each of which was served with a subpoena duces tecum with identical document requests by Patrick James and the Related Entities at their respective addresses of their registered agents in Delaware.  On December 23, 2025, Jefferies confirmed, through counsel, that it is in possession, custody, and control of the documents of each of these subpoenaed Jefferies' Affiliated Entities. Mr. James and the Related Entities' Motion to Compel Jefferies' production in this Court, if ordered, will in effect allow Mr. James and the Related Entities discovery into any of the Jefferies' Affiliated Entities under Mr. James and the Related Entities' respective subpoena to each of them.

1

2.      Mr. James disputes these allegations.  That said, defending against Debtors' broad and egregious accusations requires Mr. James and the Related Entities to seek discovery from third parties with involvement in the Debtors' financing arrangements.  Respondent Jefferies indisputably possesses documents and communications that bear directly on the Debtors' allegations.  That is evident from Jefferies' extensive pre-petition relationships with the Debtors, including holding—through its asset management arm, Leucadia Asset Management, LLC ("**LAM**"), and Point Bonita Capital Fund LLC—approximately $715 million in accounts receivable; earning substantial fees as the underwriter of a $300 million loan to the Debtors; playing a leading role in the Debtors' attempted global refinancing process in 2025; and serving as administrative agent and collateral agent under the Debtors' First Lien Term Loan Agreement.

3.      Jefferies does not dispute that it has in its possession, custody, or control documents that are relevant to the allegations in the Amended Complaint.  Nor does Jefferies dispute that it is refusing to produce responsive documents in its possession, including:  (1) internal communications concerning the Debtors; (2) documents held by the custodians at LAM and Point Bonita Capital Fund LLC, Jefferies' asset management arms; and (3) certain undisclosed categories of documents that Jefferies has already produced, or will produce, to the Debtors.  The distinctions that Jefferies draws—particularly between "external" and "internal" documents, and documents in the possession of its various entities—are arbitrary and inconsistent with the Debtors' allegations, which span First Brands' multiple financing arrangements.

4.      Moreover, Jefferies argues that complying with the Subpoena would be burdensome and that Defendants have not done their part to limit that burden.  That is incorrect. The Subpoena is tailored to match the scope of the Debtors' claims, and Defendants have repeatedly advised Jefferies that they are willing to work collaboratively to identify reasonable

2

custodians, date ranges, and search terms to reduce any purported burden.  Jefferies, however, has refused to engage in any meaningful discussion or meet-and-confer regarding the nature of its claimed burden, potential search parameters, or ways in which any burden could be reduced.  Accordingly, Jefferies' generalized "burden" objection should not be sustained.

5.      Finally, Jefferies argues that if it is required to comply with the Subpoena, Defendants must cover its costs and post a bond.  That argument fails.  There is no basis for cost-shifting because Jefferies has failed to substantiate its purported burden and because Jefferies has a clear "interest in the outcome of the case."[5]  For example, even assuming solely for the sake of argument that the Debtors prevail in the Adversary Proceeding, then Jefferies, as one of the largest creditors of First Brands, would stand to benefit from any recoveries obtained by the Debtors.

6.      Nor are Defendants aware of any authority in the Fifth Circuit, or elsewhere, requiring a litigant to post a bond to a third party as a condition of subpoena compliance.  Jefferies' position is particularly untenable here given its refusal to meet and confer regarding the scope of the required production and its failure to provide any estimate of the cost it would incur in complying with the Subpoena.  Jefferies' demand for a bond should therefore be rejected.

## ARGUMENT

### A.      Jefferies Undeniably Possesses Information Concerning the Allegations in the Complaint

7.      Mr. James and the Related Entities have explained in detail how each request in the Subpoena (each, an "**RFP**") seeks documents that are directly relevant to the allegations and claims in the Amended Complaint.  Motion ¶¶ 26–33.  In its Opposition, Jefferies does not dispute that it possesses information within its custody and control bearing on those allegations.  Instead,

---

[5]     Andra Group, LP v. JDA Software Group, Inc., 312 F.R.D. 444, 458 (N.D. Tex. 2015) (cleaned up).

Jefferies contends that it can satisfy Mr. James' "need for discovery" by producing five discrete categories of information: "(1) communications **between** First Brands and Jefferies relating to the 2025 global refinancing efforts and other financing and M&A matters over the last several years; (2) communications **between** Jefferies and lenders to First Brands relating to refinancing and financing efforts; (3) various credit and loan documents; (4) communications **between** LAM and First Brands related to the receivables facility; and (5) agreements relating to the receivables facility." Opp. ¶¶ 2, 10 (emphases added).

8.      But given the breadth of the Debtors' allegations in the Adversary Proceeding, those limited categories of documents are plainly insufficient to satisfy Jefferies' obligations. The Debtors' fraudulent transfer claims place First Brands' solvency directly at issue. As First Brands' financial advisor, Jefferies necessarily generated **internal** models, valuations, and assessments of First Brands' financial condition, as well as communications reflecting indications of interest from third parties, all of which bear directly on the solvency of First Brands during the relevant periods of time. The Debtors further allege—allegations that Mr. James disputes—that "James induced third-party lenders to lend to First Brands . . . by misrepresenting its true financial condition," Am. Compl. ¶ 45, and that Mr. James "concealed First Brands' true financial condition from counterparties, creditors, and lenders," id. ¶¶ 8, 67. Those allegations place directly at issue Jefferies' **internal communications**, including communications within (or between) Jefferies, LAM, and Point Bonita Capital Fund LLC. Such documents are necessary to determine whether any purported statements about First Brands' financial condition by Mr. James actually induced lending, or whether Jefferies and its affiliates conducted their own independent analyses and extended financing to First Brands based on those analyses.

4

9.      The allegation that Mr. James participated in a conspiracy "to effectuate the fraud" on First Brands' creditors, Am. Compl. ¶ 213, necessarily raises the question of whether third-party lenders such as Jefferies relied, to their detriment, on any statements made by Mr. James or other Defendants.  Russ v. TRW, Inc., 570 N.E.2d 1076, 1083 (1991) (identifying reliance as a key element of fraud).  Inquiry into reliance squarely places at issue **internal communications** at Jefferies, LAM, and Point Bonita Capital Fund LLC, as well as communications among those entities, concerning their evaluation of First Brands and the basis for their lending decisions. Where, as here, internal communications bear directly on the elements of the claims asserted, courts consistently conclude that discovery into such communications is justified.  Texas Ins. Co. v. Talisman Specialty Underwriters, Inc., 2025 WL 2466988, at *5 (E.D. La. Aug. 27, 2025) (characterizing a discovery response that omitted internal files as "paltry" and requiring "non-privileged responsive internal communications . . . produced and any privileged communications . . . logged").

10.      For similar reasons, the Debtors' allegations also place at issue documents reflecting how LAM and Point Bonita Capital Fund LLC accounted for these loans, as well as communications between LAM and its investors or limited partners concerning those loans and the issues raised in the Amended Complaint.

11.      Finally, Jefferies has taken the position that even among the **external** communications it claims it will produce, it reserves the right to withhold **unspecified** categories of documents.  Motion Ex. 4 (email of Dec. 30, 2025, at 12:35 p.m.) ("Jefferies will agree to produce, on a professionals' eyes only basis under the protective order: . . . all documents it produces to the Debtors in the future in response to those Rule 2004 requests, unless Jefferies objects to production of particular documents or categories of documents produced in the future

and explains the basis of that objection.").  That open-ended reservation is untenable.  It would permit Jefferies to withhold, now or in the future, virtually any documents responsive to the Subpoena, undermining both the scope and the purpose of the requested discovery.

### B.    There Is No Basis For Jefferies To Quash The Subpoena

12.    Jefferies next asks the Court to quash the Subpoena on the ground that the document requests in the Subpoena are "facially overbroad" and "unduly burdensome."  Opp. ¶¶ 20–31.  The party seeking to quash a subpoena bears the burden of proof.  Wiwa v. Royal Dutch Petroleum Co., 392 F.3d 812, 818 (5th Cir. 2004).  Jefferies cannot meet that burden.

13.    As an initial matter, Jefferies did not timely move to quash the Subpoena, as Jefferies did not raise the argument to quash—let alone file a motion to quash—until approximately one month after the Subpoena's compliance date.[6]

14.    Nonetheless, Jefferies' bases to quash the Subpoena do not stand.  As Jefferies acknowledges, in considering whether a subpoena is unduly burdensome, this Court should consider "(1) [the] relevance of the information requested; (2) the need of the party for the documents; (3) the breadth of the document request; (4) the time period covered by the request; (5) the particularity with which the party describes the requested documents; and (6) the burden imposed."  Opp. ¶ 18 (citing Wiwa, 392 F.3d at 818).  Each of these factors weighs in favor of compelling compliance with the Subpoena:

---

[6]    Technically, to be "timely," Jefferies' "motion" to quash had to be made prior to the subpoena's return date in the district where compliance was required, i.e., the Southern District of New York.  MetroPCS v. Thomas, 327 F.R.D. 600, 615 (N.D. Tex. 2018) ("[I]n general, courts have read 'timely' to mean within the time set in the subpoena for compliance.");  Estate of Tillman by Tillman v. City of New York, 345 F.R.D. 379, 385 (E.D.N.Y. 2024) ("A motion to quash a subpoena must be made prior to the return date of the subpoena—that is, prior to the time specified in the subpoena for compliance.").  Defendants served the Subpoena on Jefferies on December 2, 2025, with a requested date of compliance of December 16, 2025.  See Dkt. No. 125-1.  Jefferies did not request that the Subpoena be quashed until a month after its deadline of compliance.  That alone provides a reason to decline to quash the subpoena.

6

- **Relevance**.  As explained in greater detail in Defendants' opening brief, which Defendants will not repeat here, each request in the Subpoena corresponds directly to the allegations in the Complaint.  See Motion ¶¶ 26–33.

- **Need of the party for the documents**.  Defendants have a substantial need for the requested documents, which the Debtors have put directly at issue.  Mr. James is no longer employed by First Brands and does not have his former email inbox, or access to First Brands' servers or databases.  Although Defendants have requested these documents from Debtors, the Debtors, like Jefferies, have not been forthcoming in discovery.  Furthermore, Defendants have no alternative means of obtaining Jefferies' internal documents, which are uniquely probative and likely to include, among other things: (1) internal assessments of First Brands' solvency performed by Jefferies in Jefferies' capacity as the Debtors' financial advisor, including valuations of assets and liabilities, liquidity, and capitalization, which bear directly on the Debtors' constructive fraudulent transfer claims; (2) internal analyses concerning how factored receivables were understood, evaluated, and accounted for by Jefferies, including whether Jefferies participated in the invoice financing due to the exorbitant interest rates touted to its investors; and (3) internal investment decisions and deliberations by LAM and Point Bonita Capital Fund LLC, which are relevant to what those entities knew and when they knew it— critical issues in light of the Debtors' allegations that lenders were supposedly defrauded.  This type of evidence resides exclusively with First Brands' creditors, of which Jefferies is one of the largest.

- **Breadth of the documents requested / particularity of the requests / time period covered by the requests**.  Rule 26 permits discovery into "[a]ny matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case."  Rangel v. Gonzalez Mascorro, 274 F.R.D. 585, 590 (S.D. Tex. 2011) (quoting Khodara Env't II, Inc. ex rel. Engle Env't II, L.P. v. Chest Twp., No. CIV.A. 3:2002-96, 2007 WL 2253606, at *1 (W.D. Pa. Aug. 3, 2007)).  The requests in the Subpoena are no broader than the allegations in the Amended Complaint.  For example, the Amended Complaint seeks avoidance of hundreds of purported transfers to Mr. James going all the way back to 2018.  See, e.g., Am. Compl. Ex. A [ECF No. 141-1] (listing hundreds of transfers between 2018 and 2025).  The Debtors further allege, in sweeping terms, that all funding secured by the company was fraudulently induced.  See, e.g., Am. Compl. ¶ 134 ("On information and belief, James secured funding from lenders based on false representations that James knowingly and intentionally made about First Brands' financial position.").  At the same time, the Debtors have refused to provide meaningful specificity regarding which statements were made, by whom, to whom, which invoices were allegedly inflated, or which lending arrangements were purportedly induced by fraud.  Given the breadth of the Debtors' allegations, Defendants are entitled to discovery from third parties over a commensurate scope and time period.  Because the scope of the Subpoena corresponds with the scope of

7

the Amended Complaint, the Subpoena is not facially broad.[7]  In any event, as Defendants have repeatedly told Jefferies, they are willing to negotiate a document discovery protocol (e.g., custodians, search terms, and date ranges) to ensure that the burden on Jefferies is not significant.

- **Burden imposed**.  Finally, Jefferies argues that it would face undue burden if forced to comply with the subpoena.  However, "[a] moving party opposing discovery must show how the requested discovery was overly broad, burdensome, or oppressive by submitting affidavits or offering evidence revealing the nature of the burden."  Andra Group, LP v. JDA Software Group, Inc., 312 F.R.D. 444, 449 (N.D. Tex. 2015).  Jefferies has not substantiated its claimed burden with evidence of any kind, including hit counts, estimated review volumes, or the projected cost of compliance.  Jefferies therefore has not met its burden to show that the Subpoena imposes an undue burden.[8]

### C.    Cost Shifting Is Inappropriate And No Bond Should Be Required

15.    Finally, Jefferies asks the Court to shift the costs of complying with the Subpoena. There is no basis for cost shifting.  Jefferies relies on the Fifth Circuit's decision in Leonard v. Martin, 38 F.4th 481 (5th Cir. 2022), to argue that cost shifting is required here.  Opp. ¶¶ 33–35. That reliance is misplaced.  In Leonard, the subpoena recipient submitted concrete evidence establishing both an hourly billing rate and the number of hours required to comply with the subpoena.  See id. at 490 (noting subpoena recipient established that compliance would require 60 hours of work at $1,000 per hour).  The Fifth Circuit then compared the resulting compliance cost

---

[7]    In each of the cases cited by Jefferies where the Court quashed a subpoena, the requested documents were well beyond the breadth and scope of the complaint, or the third party otherwise provided evidence that it did not have the relevant or requested documents.  For example, in Alorica Inc. v. Tech Mahindra (Americas) Inc., 2025 WL 2301881, at *5 (E.D. Tex. Aug. 8, 2025), the court modified a subpoena that spanned seven years, because the dispute involved a purported breach of contract in 2023.  Likewise, in Jung v. 24 Hour Fitness USA, Inc., 2019 WL 570740, at *4 (E.D. Tex. Feb. 12, 2019), the court quashed a trial subpoena requesting testimony and documents because the witness "will not likely provide significant, relevant testimony" and because the witness "[did] not have access to [requested] anymore."  None of these circumstances apply here where the Subpoena is no broader than the relief sought in the Complaint.

[8]    Jefferies argues that Defendants have not agreed to Jefferies' "compromise" that would only require Jefferies to produce external documents, and even there, refuse to produce certain categories of external documents that it is refusing to disclose.  Defendants cannot agree to a proposal that would effectively permit Jefferies to produce whatever documents it wants—i.e., documents helpful and supportive of Jefferies' views in the bankruptcy cases—and refuse to produce documents that would be supportive of Mr. James' defenses.  Again, Defendants have agreed to meet and confer with Jefferies to reduce the purported burden on it, but given the Amended Complaint's allegations, at a minimum, Jefferies must agree to produce internal communications and provide information upfront regarding what specific categories of documents it seeks to withhold.

8

of approximately $60,000 to the $120,000 at issue in that litigation, as well as to the "tenuous relevan[ce]" of the requested documents, and ordered cost shifting based on those specific facts. Id.

16.     The circumstances here are entirely different.  The amount at issue in the Adversary Proceeding, as alleged by the Debtors, is hundreds of millions, if not billions, of dollars.  See Am. Compl. ¶¶ 1, 18, 70.  Jefferies has offered no evidence regarding the time, expense, or burden associated with complying with the Subpoena.  And Jefferies stands to benefit directly from this litigation if the Debtors prevail.  Under these circumstances, Jefferies has not carried its burden to justify cost shifting.

17.     Cost shifting is also premature.  Jefferies has not incurred any meaningful costs to date in responding to the Subpoena, as the documents it has already produced to Mr. James and the Related Entities were those previously produced to the Debtors in connection with the Debtors' Rule 2004 discovery.  If and when Jefferies incurs additional costs in complying with the Subpoena, the Court can assess the actual burden imposed and determine whether cost shifting is appropriate at that time.

18.     Additionally, there is no precedent for requiring Defendants to post a bond as a condition of Jefferies' compliance with the Subpoena.  To support its position, Jefferies cites the Seventh Circuit's decision in Anderson v. Steers, Sullivan, McNamar & Rogers, 998 F.2d 495, 496 (7th Cir. 1993), and the Fifth Circuit's decision in Ehm v. Amtrak Bd. of Directors, 780 F.2d 516, 517–18 (5th Cir. 1986).  Neither decision involves fee shifting under a subpoena and neither decision supports Jefferies' request.  In Anderson, the district court authorized fee shifting and required the posting of a bond where the plaintiff brought a patently "frivolous" lawsuit and the defendants provided an estimate of $10,000 to defend the case.  998 F.2d at 496.  Under those

9

circumstances, the Seventh Circuit affirmed the district court's decision to require the plaintiff to post a bond to secure the anticipated defense costs. Id. That case had nothing to do with fee shifting in the context of a Rule 45 subpoena. The Fifth Circuit's decision in Ehm is even further afield. There, the Fifth Circuit addressed a now-defunct local rule of the Western District of Texas that permitted a court to require either party to post "security for costs as the court may direct." 780 F.2d at 517–18. That local rule no longer exists, was not intended to apply to third-party subpoenas, and has no analogue in the Southern District of Texas or the Bankruptcy Court for the Southern District of Texas, see S.D. Tex. L.R. (2000); S.D. Tex. Bankr. L.R. (2025).

19.     Jefferies cites no authority in which any federal court has required a litigant to post a bond as a prerequisite to a third party's compliance with a subpoena. Jefferies therefore has not established any entitlement to the extraordinary relief it seeks.

## CONCLUSION

For the reasons set forth above, Patrick James and the Related Entities respectfully move the Court for an order (i) compelling Jefferies to comply with the subpoena duces tecum by no later than January 29, 2026, and (ii) such other and further relief the Court deems just and proper.

10

Date:   January 20, 2026
        Houston, Texas

Respectfully submitted,

**QUINN EMANUEL URQUHART &
SULLIVAN, LLP**

*/s/ Cameron Kelly*

Cameron Kelly
TX SBN: 24120936700
Louisiana Street, Suite 3900
Houston, Texas 77002
Telephone: (713) 221-7000

Michael B. Carlinsky (admitted *pro hac vice*)
James C. Tecce (admitted *pro hac vice*)
Scott Hartman (admitted *pro hac vice*)
Anil Makhijani (admitted *pro hac vice*)
Reece Pelley (admitted *pro hac vice*)
Mengzhou (Melissa) Fu (admitted *pro hac vice*)
Jack Robbins (admitted *pro hac vice*)
Grace Sullivan (admitted *pro hac vice*)
295 5th Avenue
New York, NY  10016
Telephone: (212) 849-7000

*Attorneys for Patrick James and the Related
Entities*

11

## CERTIFICATE OF SERVICE

I, Cameron Kelly, hereby certify that on the 20th day of January 2026, a copy of the attached Reply was served via the Clerk of the Court via ECF to the parties registered to receive service.

By:   _/s/ Cameron Kelly_
        Cameron Kelly