**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| FIRST BRANDS GROUP LLC, *et al.*, | § | CASE NO. 25-90399 (CML) |
| | § | |
| Debtors.[1] | § | (Jointly Administered) |

| | | |
|---|---|---|
| FIRST BRANDS GROUP LLC *et al.*, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | Adversary Proc. No. 25-03803 (CML) |
| | § | |
| PATRICK JAMES, THE PATRICK JAMES TRUST, ALBION REALTY, LLC, ALESTER TECHNOLOGIES LLC, BATTERY PARK HOLDINGS LLC, LARCHMONT LLC, PEGASUS AVIATION, LLC, MICHAEL BAKER, PETER ANDREW BRUMBERGS, STEPHEN GRAHAM, JOHN AND JANE DOE(S) 1-100, and ABC CORPORATION(S) 1-100, | § § § § § § § § § § § | |
| | § | |
| Defendants. | § | |

**UNITED STATES OF AMERICA'S AMENDED[2] MOTION TO INTERVENE AND STAY DISCOVERY AND SUPPORTING MEMORANDUM OF LAW**

---

[1] A complete list of Debtors in these chapter 11 cases may be obtained on the website of Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/firstbrands. Debtors' service address for these chapter 11 cases is 127 Public Square, Suite 5300, Cleveland, OH 44114.

[2] For the convenience of the Court and the Parties, a redline comparison of this Amended Motion to the United States of America's Motion to Intervene and Stay Discovery and Supporting Memorandum of Law, ECF Dkt. No. 166 filed on April 12, 2026, is attached hereto as Exhibit G.

**THIS MOTION SEEKS AN ORDER THAT MAY ADVERSELY AFFECT YOU.   IF YOU OPPOSE THE MOTION, YOU SHOULD IMMEDIATELY CONTACT THE MOVING PARTY TO RESOLVE THE DISPUTE.   IF YOU AND THE MOVING PARTY CANNOT AGREE, YOU MUST FILE A RESPONSE AND SEND A COPY TO THE MOVING PARTY.   YOU MUST FILE AND SERVE YOUR RESPONSE WITHIN 21 DAYS OF THE DATE THIS WAS SERVED ON YOU. YOUR RESPONSE MUST STATE WHY THE MOTION SHOULD NOT BE GRANTED.   IF YOU DO NOT FILE A TIMELY RESPONSE, THE RELIEF MAY BE GRANTED WITHOUT FURTHER NOTICE TO YOU.   IF YOU OPPOSE THE MOTION AND HAVE NOT REACHED AN AGREEMENT, YOU MUST ATTEND THE HEARING.   UNLESS THE PARTIES AGREE OTHERWISE, THE COURT MAY CONSIDER EVIDENCE AT THE HEARING AND MAY DECIDE THE MOTION AT THE HEARING.**

**REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEY.**

# **TABLE OF CONTENTS**

TABLE OF CONTENTS…………………………………………………………… i

TABLE OF AUTHORITIES…………………………………………………….... ii

PRELIMINARY STATEMENT..………………………………………………… 1

JURISDICTION AND VENUE...………………………………………………... 3

BACKGROUND…………………………………………………………………. 3

I.     THE CRIMINAL CASE…………………………………………………... 3

II.    THE ADVERSARY PROCEEDING……………………………………….. 6

ARGUMENT……………………………………………………………………... 8

I.     THE UNITED STATES IS ENTITLED TO INTERVENE……………….. 8

II.    DISCOVERY SHOULD BE STAYED PENDING RESOLUTION OF THE CRIMINAL CASE………………………………………………... 11

    A.    Applicable Law…………………………………………………….. 11

    B.    Application of the Stay Factors……………………………………... 13

        1.    *Substantial Overlap Exists*…….…………………………….. 13

        2.    *The Criminal Case is Proceeding Expeditiously*…………………………. 14

        3.    *The Debtors' Interests Do Not Outweigh the Need for a Stay*………….. 14

        4.    *The Defendants' Interests Support a Stay*……………………… 15

        5.    *Judicial Economy Favors a Stay*………………………………. 17

        6.    *The Public Interest Strongly Supports a Stay*…………………… 18

CONCLUSION…………………………………………………………………... 20

CERTIFICATE OF CONFERENCE………………………….…………………… 21

CERTIFICATE OF SERVICE…………………………………..………….. 22

## TABLE OF AUTHORITIES

**Cases**                                                                                           **Page(s)**

*Alcala v. Texas Webb Cnty.*, 625 F. Supp. 2d 391 (S.D. Tex. 2009) ...................................... 11, 12

*Bd. of Governors v. Pharaon*, 140 F.R.D. 634 (S.D.N.Y. 1991) .................................................. 19, 20

*Bowman Dairy Co. v. United States*, 341 U.S. 214 (1951) ...................................................................10

*Bureerong v. Uvawas*, 167 F.R.D. 83 (C.D. Cal. 1996) .......................................................................9

*Campbell v. Eastland*, 307 F.2d 478 (5th Cir. 1962) ..........................................................................19

*DeLeon v. City of Corpus Christi*, 488 F.3d 649 (5th Cir. 2007) .........................................................11

*Dominguez v. Hartford Fin. Serv.Group Inc.*, 530 F. Supp.2d 902
    (S.D. Tex. 2008) ........................................................................................................... 9, 13

*Heller Healthcare Fin., Inc. v. Boyes*, No. Civ. A. 300CV1335D,
    2002 WL 1558337 (N.D. Tex. July 15, 2002) ...................................................................12

*In re Eisenberg*, 654 F. 2d 1107 (5th Cir. 1981) ..................................................................................19

*In re Marceca*, 131 B.R. 774 (Bankr. S.D.N.Y. 1991) ........................................................................12

*In re Ramu Corp.*, 903 F.2d 312 (5th Cir. 1990) ............................................................................ 9, 11

*In re SK Foods, L.P.*, CA No. S–10–1492 LKK, 2010 WL 5136189
    (E.D. Cal. Dec. 10,2010) ...................................................................................................12

*In re Zinnel*, CA No. 2:12–cv–00249–MCE, 2013 WL 1284339
    (E.D. Cal. March 28, 2013)................................................................................................12

*Landis v. North American Co.*, 299 U.S. 248 (1936) ............................................................................11

*Mayo v. Tri-Bell Indus.*, 787 F.2d 1007 (5th Cir. 1986)......................................................................11

*S.E.C. v. AmeriFirst Funding, Inc.*, No. 3:07 Civ., 1188,
    2008 WL 866065 (N.D. Tex. Mar. 17, 2008) ...................................................................13

*S.E.C. v. Calabrigo*, No. 22 Civ. 3096 (LJL), 2022 WL 4752427
    (S.D.N.Y. Sept. 30, 2022).............................................................................................. 16, 19

*S.E.C. v. One or More Unknown Purchasers of Sec. of Glob. Indus., Ltd.*, No. 11 Civ. 6500 (RA),
    2012 WL 5505738 (S.D.N.Y. Nov. 9, 2012) ...................................................................17

*S.E.C. v. Shkreli*, 15 Civ. 7175 (KAM), 2016 WL 1122029
(E.D.N.Y. Mar. 22, 2016) ...................................................................................13, 14, 15

*SEC v. Beacon Hill Asset Mgmt. LLC*, 2003 WL 554618 (S.D.N.Y. Feb. 27, 2003) ..................19

*SEC v. Blaszczak*, No. 17-CV.-3919 (AJN), 2018 WL 301091 (S.D.N.Y. Jan. 3, 2018) ..........10

*SEC v. Chestman*, 861 F.2d 49 (2d Cir. 1988) ..................................................................................9

*SEC v. Dresser Industries, Inc.*, 628 F.2d 1368 (D.C. Cir. 1980)....................................................12

*SEC v. First Fin. Grp. of Tex., Inc.*, 659 F.2d 660 (5th Cir. 1981)...................................................11

*SEC v. Mutuals.com, Inc.*, CA No. 3:03–CV–2912–D, 2004 WL 1629929
(N.D. Tex. July 20, 2004) ......................................................................................... 8, 9

*SEC v. Nicholas*, 569 F. Supp. 2d 1065 (C.D. Cal. 2008) ....................................................... 18, 19

*SEC v. Stanford Int'l Bank, Ltd.*, CA No. 3:09-CV-298-N,
2010 WL 11492395 (N.D. Tex. Jan. 5, 2010)......................................................................8

*SEC. v. Tuzman*, No. 15-cv.-7057 (AJN), ECF No. 43,
(S.D.N.Y. Mar. 1, 2016) ...................................................................................13, 14, 18

*State Farm Lloyds v. Wood*, No. 06 Civ. 503, 2006 WL 3691115
(S.D. Tex. Dec. 12, 2006)......................................................................................... 13, 18

*Trs. of Plumbers & Pipefitters Nat'l Pension Fund v. Transworld Mech., Inc.*,
886 F. Supp. 1134 (S.D.N.Y. 1995).......................................................................... 12, 14

*Twenty First Century Corp. v. LaBianca*, 801 F. Supp. 1007 (E.D.N.Y. 1992) .......................... 8, 17

*United States v. Cherry*, 876 F. Supp. 547 (S.D.N.Y. 1995).............................................................10

*United States v. Gross*, 24 F.R.D. 138 (S.D.N.Y. 1959) ...................................................................10

*United States v. Kordel*, 397 U.S. 1 (1970) .......................................................................................11

*United States v. Little Al*, 712 F.2d 133 (5th Cir. 1983)...................................................................11

*United States v. McCarthy*, 292 F. Supp. 937 (2d Cir. 1968)............................................................18

*United States v. Murray*, 297 F.2d 812 (2d Cir. 1962) .....................................................................10

*United States v. Percevault*, 490 F.2d 126 (2d Cir. 1974)................................................................18

*Volmar Distribs., Inc. v. New York Post Co.*, 152 F.R.D. 36 (S.D.N.Y. 1993)................................13

**Statutes**

18 U.S.C. § 2………………………………………………………....................  4

18 U.S.C. § 225…………………………………………………….................  4

18 U.S.C. § 1343……………………………………………………............  4

18 U.S.C. § 1344……………………………………………………............  4

18 U.S.C. § 1349……………………………………………………............  4

18 U.S.C. § 1956(a)(1)(B)(i)…………………………………………...........  4

28 U.S.C. §§ 157(b)(2)(A),(B),(H), and (O)…………………………………  3

28 U.S.C. §1409……………………………………………………………..  3

18 U.S.C. § 3500………………………………………………………...  18, 19

**Rules**

Federal Rule of Bankruptcy Procedure 7024...……………………………............  8

Federal Rule of Civil Procedure 24(a)(2)…………………………………...........  8

Federal Rule of Civil Procedure 24(b)(1)(B)...……………………….................  8

Federal Rule of Criminal Procedure 16(b)………………………………………  11, 12

Federal Rule of Criminal Procedure 17(c)………………………………...  9, 10, 16

FED. R. CRIM. PROC. 17(c)(3)…………………………………………………  10

Local Bankruptcy Rule (LBR) 7007-1....…………………………………………  1

## PRELIMINARY STATEMENT

The United States of America (the "Government" or the "United States"), moves to intervene in the above-captioned adversary proceeding for the limited purpose of seeking a stay of all discovery including, without limitation, depositions and witness testimony, pending resolution of the parallel criminal case, *United States* v. *Patrick James & Edward James*, 26 Cr. 29 (AT) (S.D.N.Y.), and submits this memorandum in support of same.

The adversary proceeding and the criminal case arise from the same or related fraud schemes at First Brands Group, LLC ("First Brands"). The Debtors have brought claims against defendants Patrick James and entities affiliated with Patrick James (together with Patrick James, the "Patrick James Defendants"), Michael Baker, Andrew Brumbergs, and Stephen Graham. Except for the Patrick James Defendants, all defendants consent to the Government's requested relief. Further, the Debtors and the United States Trustee do not oppose the Government's motion.[3] A certificate of conference as required by LBR 7007-1 accompanies this Motion.

A stay is necessary to protect the integrity of the criminal prosecution. Without a stay, Patrick James—a defendant in the criminal case—can exploit the Federal Rules of Bankruptcy Procedure and the civil discovery process to circumvent discovery limits imposed by the Federal Rules of Criminal Procedure. Patrick James may depose cooperating witnesses whose statements the United States need not produce until trial. In so doing, Patrick James would force others to choose between: (a) jeopardizing their criminal defense by waiving their Fifth

---

[3] The Debtors are supportive of a stay of discovery for 60 days and take no position on a stay going beyond 60 days.

Amendment rights; or (b) invoking their Fifth Amendment rights and suffering adverse inferences in the civil proceedings.   Meanwhile, Patrick James could tailor his own testimony based upon information unavailable through proper criminal discovery channels.   These risks are not speculative: Patrick James has already sought to depose witnesses and issued subpoenas demanding documents—including, without limitation, for records produced to the U.S. Department of Justice during its investigation into the James brothers—with return dates that have already elapsed.   The Court should stay all discovery beyond the existing stay (which expires in early April 2026) to preserve the integrity of both proceedings.

As the criminal case will likely resolve multiple factual issues present in this adversary proceeding, a stay will not prejudice the parties.   Because of the differing burdens of proof in the criminal and civil cases, and a criminal defendant's right to a speedy trial, the criminal case will continue regardless of whether this matter is stayed.   As it advances, the criminal case will likely marshal the evidence of, and adjudicate, Patrick James's awareness of at least some of the fraudulent conduct alleged in both proceedings.   The criminal case will also surface evidence regarding Patrick James's control of First Brands' business; Patrick James's and Edward James's roles in selling fictitious and inflated accounts receivable and accounts payable; Patrick James's and Edward James's role in acquiring and concealing "off-balance sheet" financing for First Brands; acquisition of fraudulent lender proceeds by Patrick and Edward James; the nature and value of First Brands' indebtedness, both disclosed and undisclosed, and the relationship between First Brands and its lenders.   Without a stay, these issues would have to be litigated twice in different fora under different burdens of proof.   If this action is stayed, however, the criminal case, which is proceeding expeditiously, will likely

streamline and simplify this adversary proceeding through judicial determination of the key issues and collateral estoppel, and thereby enhance judicial economy and preserve assets for creditor recovery.

Accordingly, for these reasons and the reasons set forth in greater detail *infra*, the United States files this Amended Motion to Intervene and Stay Discovery and Supporting Memorandum of Law ("Motion"), and respectfully requests that the Court stay discovery until the criminal case concludes.

## JURISDICTION AND VENUE

The Debtors' adversary proceeding and amended complaint seeking monetary, injunctive, and equitable relief were filed pursuant to sections 105(a), 502, 542, 544, 548, 550, and 551 of the Bankruptcy Code and Rules 3007, 6009, and 7001 of the Federal Rules of Bankruptcy Procedure.  The amended complaint alleges this is a core proceeding under 28 U.S.C. §§ 157(b)(2)(A),(B),(H), and (O) and this Court has jurisdiction to hear and determine this proceeding and to enter a final order and judgment.  The amended complaint also alleges that venue is proper in the Court pursuant to 28 U.S.C. § 1409.  Although the United States is not a party to this adversary proceeding, and is only seeking to intervene for the limited purpose of staying discovery, the United States denies that this is a core proceeding and does not consent to the entry of final orders or judgments by this Court.

## BACKGROUND

### I.    THE CRIMINAL CASE

On January 27, 2026, a grand jury sitting in the United States District Court for the Southern District of New York returned a nine-count indictment (the "Indictment" or "Ind.").

The Indictment charges Patrick James with organizing, managing, and supervising a continuing financial crimes enterprise, in violation of Title 18, United States Code, Sections 225 and 2) (Count One).  The Indictment further charges both Patrick James and Edward James—Patrick's brother and a former senior executive of First Brands—with: (i) conspiracy to commit wire fraud and bank fraud, in violation of Title 18, United States Code, Section 1349 (Count Two); (ii) multiple counts of wire fraud affecting a financial institution, in violation of Title 18, United States Code, Sections 1343 and 2 (Counts Three, Four, Six, and Eight); (iii) multiple counts of bank fraud, in violation of Title 18, United States Code, Sections 1344 and 2 (Counts Five and Seven); and (iv) conspiracy to commit money laundering, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i) (Count Nine). *See United States v. Patrick James & Edward James*, No. 26 Cr. 29 (AT) (S.D.N.Y. Dec. 15, 2024) (Dkt. 2). A copy of the grand jury's Indictment is attached hereto as Exhibit A.

As alleged in the Indictment, from 2018 through September 2025, Patrick James and Edward James, together with their co-conspirators, perpetrated a series of fraudulent schemes against First Brands' lenders and financing partners. *See* Exhibit A, Indictment at ¶ 2.  As part of the defendants' schemes, First Brands: faked and falsely inflated invoices for accounts receivable and payable; double- and triple-pledged loan collateral; falsified corporate financial statements; and concealed substantial liabilities from lenders. *Id.*  These schemes yielded billions of dollars in financing necessary to fuel First Brands growth-through-acquisition strategy. *Id.* at ¶ 7.  The schemes also enabled Patrick James and Edward James to reap millions of dollars in proceeds derived from their fraud. *Id.* at ¶ 2.

By 2025, however, First Brands' fraudulent schemes could not forestall acute cash shortages and mounting liabilities at the company, which ultimately declared bankruptcy on September 28, 2025. *Id.* at ¶ 36.  In the months prior, Patrick James and Edward James recognized the company's dire position and attempted to refinance First Brands' debt or sell the company.  As that process was underway, Patrick James and Edward James closed ranks, restricting the flow of information outside the company in an effort to prevent the true financial picture at First Brands from being disclosed to creditors, auditors, and potential purchasers. *Id.* at ¶ 34.

Even as the frauds unraveled and First Brands' financial issues mounted, Patrick James continued to enrich himself as the owner of First Brands.  Through the series of frauds he directed, Patrick James caused billions of dollars in gross proceeds to flow into First Brands from counterparties and received at least hundreds of millions of dollars in gross proceeds into his personal accounts. *Id.* at ¶ 35.

The scale of the defendants' fraud was staggering.  At the time of its bankruptcy, First Brands—a company that reported approximately $5 billion in net annual sales worldwide—declared $12 million in cash in its corporate bank accounts and over $9 billion in liabilities. As a consequence of the defendants' fraudulent schemes, First Brands' lenders and creditors now face billions in losses. *Id.* at ¶ 3.

Two former First Brands executives, VP of Finance Peter Andrew Brumbergs and CFO Stephen Graham, pled guilty on January 27, 2026 and March 2, 2026, respectively, and

agreed to cooperate with the Government, including by offering testimony when requested.[4] *See United States v. Brumbergs et al.*, No. 26 Cr. 25 (AT) (S.D.N.Y.).   Their sentencing hearings have not yet been scheduled.   The criminal case against Patrick James and Edward James, assigned to Judge Analisa Torres, is proceeding expeditiously, with a trial date set for July 13, 2026.   Since the initial pretrial conference on February 4, 2026, the Government has produced more than a million documents in discovery, including search warrant returns for multiple electronic accounts, as well as corporate records from the Debtors and other third-party custodians. *See* Affirmation of Assistant United States Attorney Nicholas W. Chiuchiolo ("Chiuchiolo Aff."), attached hereto as Exhibit B.   The next conference before Judge Torres is scheduled for April 27, 2026. *Id.*

## II.    THE ADVERSARY PROCEEDING

On November 3, 2025, the Debtors initiated an adversary proceeding against Patrick James and various entities (the "Patrick James Adversary Proceeding"). (Dkt. 17).   Like the Indictment, the complaint in the Patrick James Adversary Proceeding, ECF Dkt. No. 17 ("AP Complaint") alleges that Patrick James committed fraud while leading First Brands by: (1) incurring billions in liabilities through the use of non-existent or doctored invoices for accounts receivable; and (2) using purported "special purpose vehicles" ("SPVs") to incur additional billions in financing, including by double-pledging collateral that was already encumbered. *See* AP Complaint at ¶¶ 5-6.   The AP Complaint further alleges that Patrick

---

[4]    At sentencing in the criminal cases, Judge Torres may consider against Graham and Brumbergs any statements or admissions they are compelled to make in this proceeding.   The sentencing hearings for Brumbergs and Graham will occur after the criminal case against Patrick James and Edward James has concluded.

James did not use all of the financing for the benefit of the debtors; rather, he pilfered certain company assets to maintain his lavish lifestyle. *Id.* at ¶ 7. This Court subsequently entered a temporary restraining order to preserve the status quo before denying First Brands' request for a preliminary injunction. *See* Order Denying Application for Preliminary Judgment, ECF Dkt. No. 5514.

On January 19, 2026, First Brands filed an amended complaint in the Patrick James Adversary Proceeding. *See* Amended Complaint, ECF Dkt. No. 141 ("Amended AP Complaint"). Among other things, the Amended AP Complaint alleges additional claims against defendant Patrick James and adds additional defendants, including Peter Andrew Brumbergs, Stephen Graham, and Michael Baker. The Amended AP Complaint sets forth various fraud schemes allegedly perpetrated by the defendants, including: (1) fraud in connection with First Brands' accounts receivable factoring programs; (2) double-pledging of collateral to inventory lenders; (3) fraud in connection with First Brands' supply chain factoring programs; and (4) the preparation and submission of fraudulent financial reports to First Brands' lenders. *See Id.* at ¶¶ 4-9.

The Patrick James Defendants have moved aggressively to obtain discovery in the bankruptcy proceeding. In doing so, Patrick James has sought to skirt the federal rules governing criminal discovery and gain an early preview of the Government's evidence against him in the criminal matter. For example, on January 23, 2026, the Patrick James Defendants issued a subpoena to PrimeRevenue (a supply-chain financing entity) seeking, among other records, "all [d]ocuments and information" provided to "any government agency (SEC, DOJ, FBI)." The return date on that subpoena was February 6, 2026, well before Patrick James

would have expected to receive criminal discovery.   On January 29, 2026, the Patrick James Defendants issued another subpoena to a bill-processing entity seeking, among other records, "[a]ll Communications with or relating to [among others] Stephen Graham, Michael Baker, Peter Andrew Brumbergs, Shekar Kumar, Matthew Liebson," and "all [d]ocuments and information" provided to "any government agency (SEC, DOJ, FBI)."   The return date on that subpoena was February 12, 2026.   Patrick James has issued at least 34 subpoenas, mostly to entities that are victims and/or witnesses in the criminal case against him. *See* Exhibit B, Chiuchiolo Aff. at ¶ 7.

## ARGUMENT

## I.     THE UNITED STATES IS ENTITLED TO INTERVENE

The Government has both the right and the interest to intervene.   Federal Rule of Civil Procedure 24(a)(2), as incorporated into the Patrick James Adversary Proceeding through Rule 7024 of the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules"), provides that anyone may intervene as of right in an action when the applicant "claims an interest relating to the property or transaction that is the subject of the action" and the applicant "is so situated that 'disposing of the action may as a practical matter impair or impede the movant's ability to protect its interests….'"   Alternatively, Bankruptcy Rule 7024 incorporating Federal Rule of Civil Procedure 24(b)(1)(B) provides for permissive intervention when the movant "has a claim or defense that shares with the main action a common question of law or fact."   Both standards are satisfied here.

Courts "have allowed the government to intervene in civil actions … for the limited purpose of moving to stay discovery." *Twenty First Century Corp. v. LaBianca*, 801 F. Supp. 1007,

1009 (E.D.N.Y. 1992); *see also SEC v. Stanford Int'l Bank, Ltd.*, CA No. 3:09-CV-298-N, 2010 WL 11492395, at *1 (N.D. Tex. Jan. 5, 2010) (granting Government's motion to intervene and stay discovery in parallel civil case); *SEC v. Mutuals.com, Inc.,* CA No. 3:03–CV–2912–D, 2004 WL 1629929, at *1 (N.D. Tex. July 20, 2004) (same).   The Government has a "discernible interest in intervening in order to prevent discovery in a civil case from being used to circumvent the more limited scope of discovery in the criminal matter." *SEC v. Chestman*, 861 F.2d 49, 50 (2d Cir. 1988).   The stay of a pending matter is ordinarily within the trial court's wide discretion to control the course of litigation, including authority to control the scope and pace of discovery. *In re Ramu Corp.,* 903 F.2d 312, 318 (5th Cir. 1990); *Dominguez v. Hartford Fin. Serv.Group Inc.*, 530 F. Supp.2d 902, 904 (S.D. Tex. 2008).

Intervention is warranted here because the existing parties cannot adequately protect the Government's interest in enforcing federal criminal laws. *See Bureerong v. Uvawas*, 167 F.R.D. 83 (C.D. Cal. 1996).   Allowing discovery without intervention in the case at bar would impair and interfere with the Government's ability to prosecute its criminal case.   Many facts overlap between the Patrick James Adversary Proceeding and the criminal case, meaning witnesses may be required to testify multiple times regarding the same events.   Civil discovery and witness testimony in a civil trial or evidentiary hearing before the criminal trial creates serious risks of improper witness preparation that undermine the truth-seeking function of criminal proceedings.   Indeed, absent a stay of discovery, the Patrick James Defendants will likely continue to exploit civil procedural and discovery rules to circumvent the careful limits on criminal discovery in the Federal Rules of Criminal Procedure designed to prevent, among other things, perjury and witness intimidation.

For example, Federal Rule of Criminal Procedure 17(c) sets forth limitations concerning the issuing of subpoenas by criminal defendants and requires defense counsel to obtain authorization from the presiding judge in the criminal matter before subpoenaing personal or confidential information regarding a victim.   Victims also must be provided notice and a chance to object. *See* FED. R. CRIM. PROC. 17(c)(3).   Moreover, a criminal defendant can only issue a subpoena for records that are both admissible and relevant. *See Bowman Dairy Co. v. United States*, 341 U.S. 214, 220-21 (1951); *United States v. Murray*, 297 F.2d 812, 821 (2d Cir. 1962) (observing that subpoenaed materials must themselves be admissible).   Critically, the criminal rules of procedure differ from the civil rules of procedure, which permit the issuance of subpoenas to seek production of documents or materials which, although themselves not admissible, may lead to admissible evidence. *See United States v. Cherry*, 876 F. Supp. 547, 552 (S.D.N.Y. 1995); *United States v. Gross*, 24 F.R.D. 138, 141 (S.D.N.Y. 1959) (Criminal Rule 17(c) cannot be used "to obtain leads as to the existence of additional documentary evidence or to seek information relating to the defendant's case.   This type of discovery ... has not been authorized for criminal trials.").

The careful and considered limitations on criminal discovery are designed to protect the integrity of the proceedings.   "The public's interest in preserving the integrity of criminal proceedings can be undermined in three major ways when discovery proceeds in parallel civil and criminal litigation[.]" *SEC v. Blaszczak*, No. 17-CV.-3919 (AJN), 2018 WL 301091, at *3 (S.D.N.Y. Jan. 3, 2018).   As the Court explained in *Blaszczak*:

> First, 'broad disclosure of the essentials of the prosecution's case may lead to perjury and manufactured evidence.'   Second, 'revelation of the identity of prospective witnesses may create the opportunity for intimidation.'   Third, 'criminal defendants may unfairly surprise the prosecution at trial with

information developed through discovery, while the self[-] incrimination privilege would effectively block any attempts by the Government to discover relevant evidence from the defendants.'

*Id.*, 2018 WL 301091 at *3 (citation omitted).

In addition, witnesses and defendants (such as Brumbergs and Graham) will likely be forced to choose between: (a) jeopardizing their criminal defenses and strategies by waiving their Fifth Amendment rights; or (b) invoking their Fifth Amendment rights and suffering adverse inferences in this civil proceeding.

Considering these circumstances, the Government respectfully submits that its motion to intervene should be granted.

## II. DISCOVERY SHOULD BE STAYED PENDING RESOLUTION OF THE CRIMINAL CASE

### A. Applicable Law

Courts possess inherent authority to stay proceedings "to control the disposition of the causes on [their] docket with economy of time and effort," *Landis v. North American Co.*, 299 U.S. 248, 254 (1936), and "to control the scope and pace of discovery." *In re Ramu Corp.*, 903 F.2d at 318. This authority includes a court's wide discretion to stay civil proceedings, postpone discovery, or impose protective orders and conditions during parallel criminal prosecutions "when the interests of justice seemed to require such action." *United States v. Kordel*, 397 U.S. 1, 12 n.27 (1970); *see also DeLeon v. City of Corpus Christi,* 488 F.3d 649, 655 (5th Cir. 2007); *Mayo v. Tri-Bell Indus.*, 787 F.2d 1007, 1012 (5th Cir. 1986). The Fifth Circuit has recognized the propriety of such stays. *United States v. Little Al*, 712 F.2d 133, 136 (5th Cir. 1983); *SEC v. First Fin. Grp. of Tex., Inc.,* 659 F.2d 660, 668 (5th Cir. 1981). They are appropriate even when requested by the prosecution. *Kordel*, 397 U.S. at 12 n.27. Moreover,

they are particularly "warranted … to preserve a defendant's Fifth Amendment right against self-incrimination" and "to prevent extending criminal discovery beyond the limits of Federal Rule of Criminal Procedure 16(b)." *Alcala v. Texas Webb Cnty.*, 625 F. Supp. 2d 391, 397 (S.D. Tex. 2009) (citing *SEC v. Dresser Industries, Inc.*, 628 F.2d 1368, 1376 (D.C. Cir. 1980)).

In bankruptcy cases, courts have stayed proceedings where Fifth Amendment rights of parties and witnesses are seriously implicated. *See, e.g.*, *In re Zinnel*, CA No. 2:12–cv–00249–MCE, 2013 WL 1284339, *1, 4, 6-7 (E.D. Cal. March 28, 2013) (granting stay of bankruptcy appeal where debtor was criminally accused of engaging in enterprise through which he allegedly obtained assets); *In re SK Foods, L.P.*, CA No. S–10–1492 LKK, 2010 WL 5136189, *1, 7-9 (E.D. Cal. Dec. 10, 2010); (reversing denial of stay where bankruptcy litigation threatened principal's privilege against self-incrimination); *In re Marceca*, 131 B.R. 774, 778 (Bankr. S.D.N.Y. 1991) (granting stay pending criminal investigation).

Courts in this Circuit considering whether to grant a stay of discovery weigh six factors: "(1) the extent to which the issues in the criminal case overlap with those presented in the civil case; (2) the status of the criminal case, including whether the defendant has been indicted; (3) the private interests of the plaintiff in proceeding expeditiously, weighed against the prejudice to the plaintiff caused by a delay; (4) the private interests of and burden on the defendant; (5) the interests of the courts; and (6) the public interest." *Alcala*, 625 F. Supp. 2d at 398-99 (collecting cases); *see also Heller Healthcare Fin., Inc. v. Boyes*, No. Civ. A. 300CV1335D, 2002 WL 1558337, at *2 (N.D. Tex. July 15, 2002) (citing *Trs. of Plumbers & Pipefitters Nat'l Pension Fund v. Transworld Mech., Inc.*, 886 F. Supp. 1134, 1139 (S.D.N.Y. 1995)).

### B.      Application of the Stay Factors

All six factors considered within this Circuit favor a stay of discovery in the Patrick James Adversary Proceeding, including depositions and witness testimony, while the criminal case is pending.

#### 1.      *Substantial Overlap Exists*

The extent of overlap between proceedings is the "most important factor" in determining whether a stay is appropriate. *S.E.C. v. AmeriFirst Funding, Inc.*, No. 3:07 Civ. 1188, 2008 WL 866065, at *2 (N.D. Tex. Mar. 17, 2008) (quoting *Volmar Distribs., Inc. v. New York Post Co.*, 152 F.R.D. 36, 39 (S.D.N.Y. 1993)).   And when there are "overlapping issues", that "weigh[s] heavily in favor of granting a stay." *State Farm Lloyds v. Wood*, No. 06 Civ. 503, 2006 WL 3691115, at *2 (S.D. Tex. Dec. 12, 2006); *Dominguez*, 530 F. Supp 2d at 904-907.   The relevant question is whether substantially the same facts would be proven twice, wasting resources and burdening witnesses. *S.E.C. v. Shkreli*, 15 Civ. 7175 (KAM), 2016 WL 1122029, at *4 (E.D.N.Y. Mar. 22, 2016); *S.E.C. v. Tuzman*, No. 15-cv.-7057 (AJN), ECF No. 43, (S.D.N.Y. Mar. 1, 2016) at 3, (a true and correct copy of which is attached hereto as Exhibit C); *Dominguez*, 530 F. Supp 2d at 907.

Here, the answer is unambiguously yes.   The overlap between this proceeding and the criminal case is nearly complete.   Both arise from the same alleged fraud schemes.   Both involve Patrick James, as well as his co-conspirators Brumbergs and Graham.   Both will require proof of substantially the same facts through the same witnesses.   Indeed, most of the Debtors' allegations in the Patrick James Adversary Proceeding mirror the allegations in the

Indictment, and the jury's verdict in the criminal case is likely to have preclusive effect in this adversary proceeding.

2.  *The Criminal Case is Proceeding Expeditiously*

Patrick James has already been indicted, which weighs in favor of a stay.  "[T]he strongest argument for granting a stay is where a party is under criminal indictment." *Shkreli*, 2016 WL 1122029, at *5 (quotation and citation omitted).  For good reason: "the likelihood that a defendant may make incriminating statements is greatest after an indictment has issued, and second, the prejudice to the plaintiffs in the civil case is reduced since the criminal case will likely be quickly resolved." *Transworld Mechanical, Inc.*, 886 F. Supp. at 1139; *see also Tuzman*, No. 15-cv-7057, Exhibit C, at 3 (noting that an indictment normally weighs heavily in favor of a stay absent particular facts indicating that the criminal case may not be resolved expeditiously).  Moreover, there is every indication that the criminal case is proceeding expeditiously.  Indeed, Judge Torres has set trial in the criminal case for July 13, 2026—just four months from now.  In preparation for trial, the Government has produced (and is continuing to produce) substantial discovery material. *See* Exhibit B, Chiuchiolo Aff. at ¶ 5.

Likewise, the Government has filed criminal informations against both Peter Andrew Brumbergs and Stephen Graham—both of whom consent to the Government's motion for a stay.  Their criminal cases will remain pending during the pendency of the criminal case against Patrick and Edward James, as discussed further in § 4 *infra*.

3.  *The Debtors' Interests Do Not Outweigh the Need for a Stay*

The Debtors do not oppose this motion.  The criminal case is advancing rapidly. Resolution of the criminal charges will likely narrow or resolve issues in the Patrick James

Adversary Proceeding, ultimately serving the Debtors' interests.   Indeed, the criminal case will likely also have the effect of freezing and preserving assets, and resolution of the criminal case may result in the forfeiture of assets that would otherwise be the subject of the preliminary injunction motion.   This factor favors a stay.

                4.      *The Defendants' Interests Support a Stay*

A stay also protects the defendants' interests.   As noted *supra*, the sentencing hearings for Defendants Brumbergs and Graham will occur after the criminal case against Patrick James and Edward James has concluded.   During sentencing, Judge Torres may consider against Graham and Brumbergs any statements or admissions they are compelled to make in this proceeding, which means their Fifth Amendment rights continue to be implicated by discovery in the case at bar despite their guilty pleas in the criminal case.   In other words, without a stay, the defendants in the Patrick James Adversary Proceeding—such as Brumbergs and Graham—face an impossible and unjust choice: assert their Fifth Amendment rights in civil discovery and suffer adverse inferences in this proceeding or waive those rights and jeopardize their criminal defense.   Courts recognize this dilemma as a compelling reason for a stay. *See Shkreli*, 2016 WL 1122029, at *3 n.3 ("[C]riminal defendants frequently seek stays in parallel civil enforcement proceedings, often due to an adverse inference that can arise from a party's invocation of the Fifth Amendment privilege against self-incrimination.").   The stay eliminates this dilemma.   It allows defendants, including the defendants cooperating with the Government in the criminal case, to fully participate in civil discovery after the criminal case concludes, when Fifth Amendment concerns no longer exist.   Far from burdening defendants, the stay protects their constitutional rights while ensuring fair proceedings in both

cases.   This is particularly true with respect to Edward James, who has consented to a stay of discovery pending the conclusion of the criminal case against him and Patrick James in the adversary proceeding against Edward James *et alia* in this Court (AP No. 26-3005).   This factor weighs in favor of a stay.

While the Court can and should consider the views of the Patrick James Defendants, those views should not outweigh the rights and interests of the other defendants, such as Brumbergs and Graham.   Moreover, the views of the Patrick James Defendants should be weighed against their conduct to date: they have refused to participate in the very civil discovery process they seek to use affirmatively to their advantage. *See, e.g., S.E.C. v. Calabrigo*, No. 22 Civ. 3096 (LJL), 2022 WL 4752427, at *5 (S.D.N.Y. Sept. 30, 2022) (discussing strategic use by a defendant of his Fifth Amendment right in civil proceedings).   For example, on the one hand Patrick James has asserted his Fifth Amendment rights in response to the Debtors' discovery requests. *See, e.g.*, Patrick James's Responses and Objections to Debtors' First Set of Requests for Production of Documents to Defendants dated January 9, 2026, a true and correct copy of which is attached hereto as Exhibit D (asserting Fifth Amendment objections to all 78 document requests); Defendants' Consolidated Objections to Debtors' First Set of Interrogatories to Defendants dated January 9, 2025 [*sic.*], a true and correct copy of which is attached hereto as Exhibit E (asserting Fifth Amendment objections to all 18 interrogatories and "declin[ing] to respond" to any).   On the other hand, Patrick James has affirmatively used the discovery process to, among other things, circumvent the discovery rules in his criminal case and seek broad categories of records that would be improper in the criminal case under Rule 17(c). *See, e.g.*, Notice of Non-Party Subpoena *Duces Tecum* to VERCYFi LLC dated

January 29, 2026, a true and correct copy of which is attached hereto as Exhibit F, at 8 (requesting "All Communications with or relating to [among others] Stephen Graham, Michael Baker, Peter Andrew Brumbergs, Shekar Kumar, Matthew Liebson"), and 9 (requesting "All Documents and Communications between VERCYFi LLC and … (d) any government agency (SEC, DOJ, FBI, U.S. Trustee, or other regulatory authority) concerning the bankruptcy, the Document Requests You have received, alleged fraud, invoice irregularities, and any investigation of First Brands Group or the Company's factoring practices."); Exhibit B, Chiuchiolo Aff. at ¶ 7 (listing 34 subpoenas issued by the Patrick James Defendants between December 3, 2025, and January 29, 2026).

5.       *Judicial Economy Favors a Stay*

Considerations of judicial economy also weigh in favor of granting a stay.   Resolving common issues in the criminal case first will streamline this proceeding.   The criminal case's outcome will likely affect the scope and conduct of the Patrick James Adversary Proceeding, potentially establishing facts that narrow or resolve civil claims.   Requiring witnesses to testify twice regarding the same events wastes judicial resources and burdens the truth-finding process. Courts routinely recognize these efficiency concerns. *See S.E.C. v. One or More Unknown Purchasers of Sec. of Glob. Indus., Ltd.*, No. 11 Civ. 6500 (RA), 2012 WL 5505738, at *4 (S.D.N.Y. Nov. 9, 2012) ("[T]he Civil Case is likely to benefit to some extent from the Criminal Case no matter its outcome."); *LaBianca*, 801 F. Supp. at 1010-11 (recognizing judicial economy as a factor to be considered).   The parralel criminal case co-defendant Edward James has consented to a stay of discovery in connection with the adversary proceeding against him in this Court.   A stay in this adversary proceeding against Patrick James pending the

conclusion of the criminal cases against both Patrick James and Edward James avoids duplicative proceedings and conserves this Court's resources.   This factor supports the Government's application.

> 6.   *The Public Interest Strongly Supports a Stay*

The public interest in this case is paramount. *Wood*, 2006 WL 3691115 at *3 ("'[T]he public's interest in the integrity of the criminal case is entitled to precedence over the civil litigant.'") (citation omitted).   Allowing unfettered civil discovery would undermine the careful balance struck by Congress in the Federal Rules of Criminal Procedure.   Criminal discovery is purposefully limited to prevent three specific harms: perjury and manufactured evidence; witness intimidation; and unfair surprise at trial. *Tuzman*, 15-cv-70577057, Exhibit C, at 3-4 (internal citations and quotations omitted).   These are not abstract concerns.   Broad civil discovery allows criminal defendants to preview the prosecution's case, learn witness identities, and tailor testimony accordingly—all while invoking the Fifth Amendment to avoid reciprocal disclosure. *See United States v. Percevault*, 490 F.2d 126, 129 (2d Cir. 1974) (noting that the Jencks Act, 18 U.S.C. § 3500, "represents a legislative determination that access to a witness' statements could be useful in impeaching a witness but was not intended to be utilized in preparation for trial"); *United States v. McCarthy*, 292 F. Supp. 937, 942 (2d Cir. 1968) ("The claimed need to see such statements in advance in order to prepare to rebut them is little more than open notice of an intention to tailor testimony to fit the statement."); *SEC v. Nicholas*, 569 F. Supp. 2d 1065, 1070-72 (C.D. Cal. 2008) (the criminal rules were "purposefully limited so as to prevent perjury and manufactured evidence, to protect potential witnesses from

---

harassment and intimidation, and to level the playing field between the government and the defendant, who would be shielded from certain discovery by the Fifth Amendment").

The asymmetry here would be stark.   Patrick James would depose witnesses (including cooperating co-conspirators whose statements the government need not produce until trial under 18 U.S.C. § 3500), propound interrogatories, and submit requests for admission—all while refusing to answer questions himself.   The Debtors would be powerless to obtain reciprocal discovery because of Patrick James's certain invocation of Fifth Amendment rights. *See Calabrigo*, 2022 WL 4752427, at *5 (S.D.N.Y. Sept. 30, 2022) (discussing strategic use by a defendant of his Fifth Amendment right in civil proceedings); *Nicholas*, 569 F. Supp. 2d at 1070 (noting that when defendants invoke Fifth Amendment rights "the SEC would produce scores of documents and witness testimony only to be precluded from gathering reciprocal discovery from the defendants").   This is precisely the circumvention of criminal discovery rules that courts consistently reject. *See In re Eisenberg,* 654 F. 2d 1107, 1113 (5th Cir. 1981) (Liberal discovery procedures are not to be used as a back door to access information beyond the reach of criminal discovery); *Campbell v. Eastland*, 307 F.2d 478, 487 (5th Cir. 1962) ("A litigant should not be allowed to make use of the liberal discovery procedures applicable to a civil suit as a dodge to avoid the restrictions on criminal discovery and thereby obtain documents he would not otherwise be entitled to for use in his criminal suit."); *SEC v. Beacon Hill Asset Mgmt. LLC*, 2003 WL 554618, at *1 (S.D.N.Y. Feb. 27, 2003) ("The principal concern with respect to prejudicing the government's criminal investigation is that its targets might abuse civil discovery to circumvent limitations on discovery in criminal cases."); *Bd. of Governors v. Pharaon*, 140 F.R.D. 634, 639 (S.D.N.Y. 1991) ("A litigant should not be allowed

to make use of the liberal discovery procedures applicable to a civil suit as a dodge to avoid the restrictions on criminal discovery.").

The public also has a strong interest in ensuring that cooperating witnesses can fulfill their obligations without being subjected to premature depositions that may affect their willingness to testify.   Brumbergs and Graham have entered into cooperation agreements with the government.   Forcing them to testify now—before the criminal trial—could compromise their cooperation, undermine the criminal prosecution, and discourage future cooperators from coming forward.   That concern is underscored here, where Brumbergs and Graham are also defendants in the Patrick James Adversary Proceeding.

Therefore, to avoid circumvention of the criminal discovery restrictions, including the provisions designed to prevent a defendant from tailoring his testimony and obtaining asymmetrical discovery, and because neither Patrick James nor any other defendant will be prejudiced in preparing and defending themselves, this factor weighs in favor of the United States' motion.

## CONCLUSION

For the reasons set forth above, the United States respectfully requests that its motion to intervene for the limited purpose of seeking a stay of discovery in the Patrick James Adversary Proceeding until the conclusion of the Criminal Case be granted.

Dated: March 23, 2026

Respectfully submitted,

JOHN G.E. MARCK
Acting United States Attorney

By:  /s/ *Paul B. Moore*
Paul B. Moore
Assistant United States Attorney
Attorney-in-Charge
Texas Bar No. 24032755
Southern District No. 802542
1000 Louisiana, Suite 2300
Houston, Texas 77002
Tel: (713) 567-9779
Fax: (713) 718-3300
E-mail: Paul.Moore@usdoj.gov

ATTORNEYS FOR THE
UNITED STATES OF AMERICA

## CERTIFICATE OF CONFERENCE

I hereby certify that counsel for the United States conferred with the Patrick James Defendants' counsel, Scott Hartman, by email on March 6, 2026, regarding the relief requested in this Motion.   The Patrick James Defendants oppose the relief sought in this Motion.

I hereby certify that counsel for the United States conferred with Debtors' counsel, Robert Berezin, by email on March 10, 2026, regarding the relief requested in this Motion. The Debtors support a stay of discovery for 60 days and take no position on a stay going beyond 60 days.

I hereby certify that counsel for the United States conferred with the Edward James Defendants' counsel, David Shargel, by email on March 6 and 9, 2026, regarding the relief requested in this Motion.   The Edward James Defendants do not oppose the relief sought in this Motion and requested the following statement of their position be included here:

"Edward James does not oppose the government's request to stay discovery but respectfully urges the Court to go further and stay the adversary proceeding in its entirety.   As the recently filed counterclaims, crossclaims, motion for judgment on the pleadings by Onset, and the motion to dismiss filed by other defendants make clear, motion practice in this matter will be substantial. Requiring the parties to litigate complex legal questions while stopping short of discovery would be an inefficient use of the Court's and parties' resources —

including the estate's resources, which are already severely strained by the demands of multiple adversary proceedings, an ongoing mediation, and the broader administration of the bankruptcy case. Furthermore, given the number of parties and claims involved, permitting only a portion of the adversary proceeding to go forward creates a risk of inconsistent outcomes."

I hereby certify that counsel for the United States conferred with the respective counsel for Stephen Graham, Peter Brumbergs, Michael Baker, Shekhar Kumar, and Jeffries Finance LLC, by email on March 5-6, 2026, regarding the relief requested in this Motion. These parties consent to the Government's request for a stay of discovery as sought in this Motion.

I hereby certify that counsel for the United States conferred with the respective counsel for: the Onset affiliated entities; Justin Nielsen; Nielson Investments; Jonathan Gardner; JA Gardner Holdings; Dake P. Holt; Holt Investments; Todd Pederson; Yuma; Coral Dunes LLC; Seddie LLC; Asilia; Scott Miller; Joshua Tree, and the Evolution Credit Partners entities by email on March 5-6, 2026, regarding the relief requested in this Motion. These parties have no position (*i.e.*, neither consent to nor oppose) regarding the Government's request for a stay of discovery as sought in this Motion.

   /s/ *Paul B. Moore*
   Paul B. Moore
   Assistant United States Attorney

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document is being served on March 23, 2026, by the Court's ECF system or other electronic means on the service list therein.

   /s/  *Paul B. Moore*
   Paul B. Moore
   Assistant United States Attorney